ISAAC SMITH, APPELLANT, VS. CHARLES W. DAVIS AND ANDREW SCOTT, SHERIFF, APPELLEES.

1. The remedy by injunction is a preventive one only, and when the act which is sought to be prevented is done and accomplished, if a party is aggrieved thereby he must resort to some other remedy for redress.

2. This court, on appeal from an interlocutory decree of the Circuit Court, refusing to grant an injunction, the record showing that the act sought to be prevented had been done and accomplished, after the refusal of the injunction and before the appeal, is without power to afford relief to the appellant, and will not inquire whether the court erred in its decree.

3. There is no error in a Judge of the Circuit Court refusing leave to a complainant, who had filed an original bill for an injunction which had been denied by the Judge, to file a supplemental bill, when the bill showed that the act which the original bill sought to prevent had been done.

Appeal from the Circuit Court for Jackson County.

The facts of the case are stated in the opinion.

*Liddon & Carter* for Appellant.

No counsel appeared for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court:

The appellant, Isaac Smith, on the 10th day of November, A. D. 1883, filed his bill in the Circuit Court of Jackson county against the appellee, and Scott, sheriff of Jackson county. The bill alleges that on the 11th day of January, A. D. 1875, one David Moore and Frank P. Smith purchased a horse from one H. C. Lewis for one hundred dollars and gave their note to the said Lewis, with appellant and appellee, and one Wesley Smith, as sureties. That said Lewis transferred said note to J. F. Watkins & Co.,

who brought suit on the same and recovered a judgment thereon for $106.09, upon which execution issued. That this judgment was transferred by Watkins & Co. to appellee, C. W. Davis, and appellant alleges that he paid to Davis twenty dollars, in consideration of which Davis released him, as co-surety, from all liability on said execution and from contribution to any amount the appellee had paid. The bill further alleges that in March, 1879, being indebted to appellee, the appellant executed to him his note for $156.37, and to secure the same gave him a mortgage on his crops raised during said year and on his bay mare named Fannie. That Davis foreclosed this mortgage in the Circuit Court of Jackson county, and obtained a decree thereon for $75.13 and costs of suit. That the sheriff levied on two bales of cotton belonging to defendant, and afterwards informed complainant that he levied on it for what he owed C. W. Davis. That complainant, not knowing of any other debt that Davis claimed of him, except the decree aforesaid, promptly surrendered the cotton to Davis with instructions to credit it on his debt. That complainant also in the spring of 1883 gave to Davis a note on John Roulhac for $12.50, which said Davis agreed to credit on said decree. That in 1883, Davis caused the sheriff to levy on his bay mare. That appellant called on Davis to know why his mare was levied on, notwithstanding the payments aforesaid which he claimed were sufficient to cover all dues on the decree, when he learned that the said payments had not been applied to the decree, nor to the execution of Watkins & Co., though nearly a year had elapsed since they were made. That he then directed C. W. Davis and the sheriff to apply these payments to the decree of foreclosure, and not to the old Watkins & Co., execution, but that said sheriff, against the protest of complainant, entered a credit on the Watkins & Co. execu-

tion of $91.26, being the amount paid by complainant not including the note for $12.50, nearly a year before.

That the sheriff had now levied on and advertised for sale on first Monday in December, 1883, the bay mare, to satisfy the decree of foreclosure.

The bill further alleges that Davis obtained a judgment in a justice's court against himself and Silas Smith for $30.00; that notwithstanding he had fully paid and discharged this judgment that Davis had caused an execution issued thereon to be levied on the property of Silas Smith, and that he feared that he would levy the same on the property of complainant.

The prayer of the bill is for the cancellation of the credits entered on the Watkins & Co. execution, and that they be applied to the decree of foreclosure and the same be decreed to be fully satisfied, and that the Watkins & Co. execution be declared fully satisfied so far as complainant is concerned, and that the execution of Davis against complainant and Silas Smith be declared to be fully satisfied and discharged, and a prayer for an injunction restraining said Scott, sheriff of said county, from selling his bay mare, or from levying upon any other property of complainant by virtue of the Watkins & Co. execution, or the execution against complainant and Silas Smith.

The defendant, Davis, filed an answer to the bill in which he sets up that Frank P. Smith and David Moore first applied to him to go security on the note, and that he refused to do so. That afterwards the complainant requested him to sign the note as a security, and that he would hold him harmless if he would sign the same as his (complainant's) security. That he considered complainant a principal on the note. That complainant said nothing about being a security. The note, a copy of which is attached to the answer, as an exhibit, is as follows:

"$100　　　　　　　GREENWOOD, FLA., June 11, 1875.

"On or before the first day January, next, we promise to pay to H. C. Lewis, or bearer, the sum of one hundred dollars for value received.

(Signed)　　　　　　　　　ISAAC SMITH,
　　　　　　　　　　　　　　WESLEY SMITH,
　　　　　　　　　　　　　　FRANK P. SMITH."
　　　　　　　　　　　　　　"C. W. DAVIS, *Security.*"

Moore does not appear to have signed the note. Defendant also sets up in his answer that he paid the amount due on the execution to Watkins & Co., and that they transferred the same to him, that complainant paid twenty dollars to him as alleged, but denies positively that he ever, in consideration of said payment, agreed to release complainant from his liability on said execution. That complainant did deliver up the two bales of cotton to defendant, and that they agreed on the price for the same, and at the request of complainant he paid out of the proceeds thereof a small sum to Geo. F. Baltzell, and by agreement with complainant the remainder, $91.20, was to be credited on the Watkins execution, and that complainant carried a memorandum made by defendant to the sheriff to credit it on said execution. That no instructions were given him by complainant to credit the amount after deducting the payment to Baltzell on the decree of foreclosure. That no steps had been taken at that time to enforce the decree of foreclosure. Defendant denies that complainant ever gave him a note on Roulhac. That the credit of $91.20 was not entered on the Watkins & Co. execution until October, 1883, although he gave instructions to have it entered in October, 1882, when he handed to the complainant, to deliver to the sheriff, written directions to so credit it, to which complainant assented.

Defendant further denies that the execution he holds against complainant and Silas Smith has ever been paid. That he had levied it on the property of Silas Smith and he claimed it as exempt from forced sale and it was released.

Complainant, to support the allegations in his bill for the purpose of obtaining the injunction, filed in the court below the affidavit of Frank P. Smith, who deposed that he had heard read the answer of Davis, that Davis knew at the time of signing the note that Isaac Smith was a security only on the note, and that the horse was bought by the deponent and one David Moore; that said Davis had an indirect interest in the purchase of the horse, on account of having sold to deponent and Moore 80 acres of land upon a credit and it was to enable them to cultivate said land, so that they might pay for it—further, that he and Moore had a settlement on the 2d January, 1877, with Davis, and that on said settlement only $46.01 was due on the Watkins execution; that he holds a statement of the matter in the handwriting ot Davis. The statement is as follows:

MARIANNA, FLA., Jan. 2, 1877.

M. (omitting a business heading of Farley & Davis.)

| | |
|---|---|
| Amount due | $134.20 |
| By amount paid | 68.19 |
| Still due | $66.01 |
| January 1st, 1877.  By Isaac Smith | 20.00 |
| Balance due C. W. Davis | $46.01 |

The complainant also filed his own affidavit denying the statements in the answer ot Davis, which were in conflict with the allegations in the bill, and alleging that he signed the note as a security at the request of Davis. The defendant filed the affidavit of the deputy sheriff who levied on the cotton, alleging that at the time of such levy he only

had in his hands the Watkins & Co. execution and the execution against Silas Smith and complainant in favor of Davis. That he levied the Watkins & Co. execution on two bales of cotton and the execution against Silas Smith and complainant on one bale, which last levy was ordered released.

On November 22d, 1883, the Judge of the Circuit Court on a hearing refused to grant the injunction.

On the 3d day of October, A. D. 1884, the complainant moved the court for leave to file a supplemental bill, which motion the court denied. The supplemental bill alleges that since the filing of the answer of Davis, that he, Davis, has collected the note for $12.50 on Roulhac, described in the original bill. Also that the sheriff of Jackson county, the Judge having refused the injunction, sold the bay mare at public sale, and was bought by Davis for $55. That she was worth $125.

The appellant assigns as error—

" 1st. The decree and order of the court made November 22d, 1883, refusing the injunction asked for by the complainant.

" 2d. The decree and order of the court made October 3d, 1884, denying complainant to file his supplemental bill of complaint."

As to the first error assigned—the refusal of the Judge to grant an injunction—we cannot see, if we were of the opinion that the Judge, from the case made by the bill and affidavits attached, erred in refusing the injunction, and reverse the decree, how it could avail the appellant. The remedy afforded to the litigant by injunction is a preventive one only, and when the act which is sought to be prevented is done and accomplished, and is not continuous in its nature, if a party is aggrieved thereby he must look to some other method of obtaining redress.

Although at the time of the filing the bill and praying for the injunction, the remedy, if justified by the facts, was a proper one, yet what we have said above as to its inapplicability when the thing was done is equally applicable to an appeal to this court from a refusal to grant an injunction to restrain an individual from doing an act, when at the time of the appeal the act had been done more than a year. In the case of the P. & G. and A. & G. C. R. R. Cos. vs. Spratt & Callahan, 12 Fla., pp. 26, 100, the court says that the remedy by injunction is appropriate, when the remedy at law is subsequent to the injury, and the effects cannot be adequately compensated. In the case of the Attorney-General vs. New Jersey Railroad and Transportation Company, 2 Green's Reports, (Chancery) the Attorney-General filed an information in behalf of the State against the railroad company to abate a nuisance created by them by the erection of a bridge across the river Passaic at Newark. The court say, " is there anything in this case to warrant the interference of a court by way of injunction ? In the view I take of the subject I do not think it necessary to inquire whether there has been a violation of faith on the part of the defendants, or whether they have exceeded their powers, or exercised those granted to them in a wanton and oppressive manner. For from the case made by the bill and affidavits, I cannot avoid the conclusion that the nuisance complained of in the information, and what appears is the object of the relators to prevent or abate, is already there. The thing is done, and the application to this court, if not too late, would be unavailing if granted. The injunction is a preventive remedy. It interposes between the complainant and the injury he seeks to avoid. If the injury be already done, the writ can have no operation, for it cannot be applied correctively so as to remove it."

As to the second error assigned—refusal of the court to

grant leave to file a supplemental bill of complaint—it contains nothing that would, in view of the allegations in the original bill, authorize a supplemental bill. It states that the sheriff had sold the mare under the execution and for less than her value. It was too late to remedy that by injunction for the reasons given above. Motion to file supplemental bill was made in October, 1884, and the sale had taken place the December previous.

The other allegation was that Davis, since his answer, had collected the Roulhac note. This, while open to the same objection as the former, was besides only a matter of evidence, as the original bill had alleged the giving of the Roulhac note by the complainant to Davis. Davis had denied it in his answer, and if he had collected the note after his answer that fact would properly go to prove the original allegation.

We do not consider here the merits of the case made by the bill, as to whether they entitle the complainant to relief, but only as to whether, taking them as true, this court can be asked to reverse a decree when such a reversal would avail him nothing.

Decree affirmed.