SHANNON, Judge.
Willard E. Berg and Mildred A. Berg, his wife, the appellees, were the plaintiffs below. They filed a complaint against S. T. Milling and prayed for a temporary injunction and final injunctive relief. The gist of their complaint was that the defendant was operating a boatyard in Riviera Beach in a manner which constituted both a public and a private nuisance, and alleged that it was a violation of the Ordinances of the Town of Riviera Beach. In their bill plaintiffs alleged that the boatyard was operated nights, Sundays and holidays, the employees, who ran defendant’s boatyard indulged in loud talk, profanity, obscenity, loud and unnecessary noises, and in addition plaintiffs’ property was constantly invaded by smoke, noise and fumes, which originated from the boatyard. The suit was filed on May 29, 1956, and the next day being a holiday, no one was in defendant’s attorney’s office, so that defendant did not see his attorney until May 31 at approximately eleven o’clock in the morning. A hearing for a temporary injunction was held at 3:30 o’clock P.M. that afternoon.
The chancellor granted a temporary injunction restraining, until further order of the court, the defendant from repairing, constructing and working upon any boat, barge or vessel with a metal hull except that defendant could complete his work upon the steel barge that was in the defendant’s place of business, and he should so operate his boatyard so that it would not create dust and smoke which would invade the property of the plaintiffs; that the defendant could operate his boatyard from 8:00 o’clock in the morning until 4:30 o’clock in *660 the afternoon Mondays through Fridays, and from 8:00 o’clock A.M. to 12:00 Noon on Saturday; that the defendant was enjoined from allowing his agents, employees and invitees to use loud, raucous and profane language upon the boatyard premises; and the order became effective upon the plaintiffs’ posting a bond in the principal sum of $1,500. The defendant filed a motion to dismiss and a motion to dissolve, together with his answer, which motions were overruled, and the court entered a final decree on the date of August 13, 1956. The final decree conformed in all respects to the temporary injunction, except that under the final decree the defendant was allowed to work on steel boats. In the course of the proceedings the Palm Beach County Resources and Development Board was permitted to intervene. There is a point made in the appeal that the chancellor erred in his refusal of the proffered testimony of the intervenor.
On appeal defendant has set out five points, namely:
(1) The acts were not being committed nor threatened to be committed at the time of the decree;
(2) The evidence didn’t show any public or private nuisance;
(3) The court erred in denying the defendants’ motion to dismiss and dissolve the temporary injunction;
(4) The chancellor erred in refusing to set a larger injunction bond; and
(5) The chancellor erred in refusing to hear certain proffered testimony of the defendant, S. T. Milling, and the inter-venor, Palm Beach County Resources and Development Board.
It appeared from the evidence that the boatyard operated by the defendant had been in existence since 1927 and that the plaintiffs purchased their property in 1941 and constructed their home and a tourist court on it. It also appears from the testimony that the boatyard had originally serviced and repaired wooden boats almost exclusively until the time that the defendant purchased the boatyard in 1949. At the time that the suit was filed the boatyard’s work was about sixty per cent all steel barges and vessels.
The Town of Riviera Beach had passed in 1948 a zoning ordinance under which the use of the defendant’s property was a nonconforming use. Also in the testimony was the fact that the boatyard was the largest one in operation between Jacksonville and Miami on the east coast. A considerable amount of testimony was taken and in almost all of it there were conflicts.
The defendant takes the position that the acts complained of were not being committed by the defendant at the time the suit was filed; that they were not being threatened by the defendant and hence, the chancellor was in error granting an injunction.
The defendant cites us to 4 Fla. Law Review, pages 572-573, wherein a correct rule of law was cited as follows:
“ * * * Since it is well settled in this state that injunction is preventive only (Smith v. Davis, 22 Fla. 405, 1886) and ordinarily cannot be applied correctively, (Godwin v. Phifer, 51 Fla. 441, 41 So. 597, 1906) injunction will not issue if the acts complained of are past (Davis v. Wilson, 139 Fla. 698, 190 So. 716, 1939; Wilkinson v. Woodward, 105 Fla. 376, 141 So. 313, 1932; Drew Lumber Co. v. Union Inv. Co., 66 Fla. 382, 63 So. 836, 1913) and not continuous in nature (Smith v. Davis, 22 Fla. 405, 1886) and there is no showing of reasonable probability that such conduct will continue. ([City of] Jacksonville v. Wilson, 157 Fla. 838, 27 So.2d 108, 1946) Thus an injunction to restrain the holding of an election has been denied when the date fixed for the election passed before the determination of the suit to restrain. (McKinney v. County Com’rs, 26 Fla. 267 [4 So. 855; Id., Fla.], 3 So. 887, 1888).
*661 “When a party seeks the aid of a court of equity by injunction, he must show not only clear legal or equitable right, but also a well-grounded apprehension of immediate injury. (Crawford v. Bradford, 23 Fla. 404, 2 So. 782, 1887) The Florida Court has said, ‘To make out a case for an injunction, it must appear that there is at least a reasonable probability, not a bare possibility, that a real injury will occur if the writ is not granted.’ (Davis v. Wilson, 139 Fla. 698, 705, 190 So. 716, 719, 1939) If the special and peculiar injury apprehended is doubtful of occurrence, the relief is generally withheld. (Hernandez v. Board of Com’rs, 114 Fla. 219, 153 So. 790, 1934.)”
The quotation undoubtedly states the correct law, but in the present suit the plaintiffs produced testimony, and apparently the chancellor must have believed the testimony, that the acts of the defendant were not related to the past primarily but were being done at frequent intervals up to the present time. It also appears that there was competent, substantial evidence that he had operated his boatyard on Sundays, before and after business hours; that he allowed particles of rust and other substances to be deposited on the plaintiffs’ property including their automobile; that he allowed obscene and profane language to be used on his premises; and there was no reason to assume they would cease. Regardless of the defendant’s contention that such things were not now occurring, the testimony of the plaintiffs that they had been committed, and were continuing to be committed, created a conflict of testimony upon which the chancellor based his findings of fact.
In his second point the defendant asks whether the evidence showed any nuisance, public or private, committed by the defendant, which justified injunctive relief.
The defendant cites, in support of his position, Thebaut v. Canova, 1866, 11 Fla. 143. However, the plaintiff cites the case of Pizio v. Babcock, Fla.1954, 76 So.2d 654, 655, where the court said:
“As to the proof, it is evident that all the allegations of the complaint were not proven that the chancellor found that while there were conflicts in the proof there was ‘ample evidence to sustain the allegations that the operation and maintenance of the said drive-in restaurant constituted a nuisance.’ In reaching this conclusion the chancellor had the parties before him, he lived in the same community and there is no showing whatever of an abuse of discretion. To reverse him on this point under the circumstances would amount to substituting our judgment for his which we are not authorized to do.”
There not being any conflict in the decision of our Supreme Court, we are following the rationale of Pizio v. Babcock, supra, and hence, will have to rule against the defendant on this point.
The defendant strongly urges that the chancellor erred in denying his motion to dissolve the temporary injunction. Under this heading he argues there was insufficient time to prepare the case and also, that the defendant had not qualified under the Florida Fictitious Name Law, F.S.A. § 865.09.
Under the Florida rules in cases of this sort it is provided that the chancellor shall be satisfied that sufficient notice of the application has been given to the party sought to be enjoined. The time does appear to be short but the defendant testified at the hearing, in addition to two other witnesses, and he was represented by counsel, and so this court will not assume that the able chancellor erred in his refusal to order a continuance of the case.
The other phase of the point is the defendant’s contention that the plaintiffs had not complied with the fictitious name *662 statute and hence, could not institute a suit. It will suffice to say that the suit was brought in the plaintiffs’ names, and the great majority of the acts about which they complained had nothing whatever to do with their business, which was operated under the name of Lake Haven Court. It is true that several of the acts which the defendant was enjoined from doing were disturbing and annoying to the guests at the tourist court, but, also, at the same time they were equally disturbing and annoying to the plaintiffs, and as long as the acts were offensive to the plaintiffs they had a right in their individual names to maintain the suit, and so it follows that the fictitious name statute has no application herein.
The next question that the defendant poses, we have had more difficulty in deciding. That is the question of whether or not the chancellor erred in refusing to set a larger injunction bond. If we accept the defendant’s reasoning that if he could bring suit against the plaintiffs for the amount of damages he had suffered from the length of time he was restrained from work in steel boats and vessels, the amount of the bond, namely, $1,500, would not begin to take care of his damages. But, on the other hand, when we look at the case as a whole and considering the fact that the chancellor found that in working on the steel vessels the defendant necessarily had to permit some of the very acts from which, he was by temporary decree, enjoined we get a different perspective on the entire question, but since we have no evidence before us in regard to the issuance of a temporary injunction and the setting of a bond we will, of necessity, have to affirm the chancellor on this point.
Under the defendant’s fifth point he challenges the refusal of the chancellor to hear the proffered testimony of the defendant, S. T. Milling, and the Palm Beach County Resources and Development Board. The defendant has set out a portion of the record which embraces his proffer of the testimony. The chancellor had permitted Palm Beach County Resources and Development Board to intervene in this suit. The proffered testimony of Palm Beach County Resources and Development Board was to the effect that while the Board per se had no direct interest in this litigation, their indirect interest was such, it contended, as was directly contemplated by its charter, as follows:
“ ‘That its purpose is to secure and disseminate information, to advise and counsel, and to assist by all manner and means in the development of the natural resources and latent possibilities within Palm Beach County; to promote trade and to advance generally the tourist, commercial, industrial and farming interests of the County as a whole; to plan and prepare for the return to normal civilian life of our men and women now in the armed forces or otherwise engaged in the war effort; to create and foster among our citizens a spirit of harmony, good will and enterprise through the understanding of all projects that may arise, bearing relation to the County as a whole or any section thereof; to unify the efforts and energies of all of the residents of Palm Beach County for any and all common causes which will enhance the development of their County and make it a more prosperous and a better place in which to live.’ ”
The chancellor rejected the defendant’s proffer because he did not think that the board had any more interest in this suit than the public at large. In the case of Morgareidge v. Howey, 1918, 75 Fla. 234, 78 So. 14, 15, it is stated:
“It has generally been held that the interest which will entitle a person to intervene under this provision must be in the matter in litigation, and of such direct and immediate character that the intervener will either gain or lose by the direct legal operation and *663 effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or claim to, or lien upon, the property or some part thereof, which is the subject of litigation.”
Needless to say the board itself had no interest in the litigation and the only inter-rest it could have would be the interest of the public generally. Anyway, the final decree of the chancellor did not restrain the defendant economically and we cannot see how the board was hurt by the chancellor’s ruling any more than we can see why the defendant was.
The plaintiffs raise on their cross-assignments of error the point that the chancellor was in error in not completely enjoining the nuisance on the ground that such injunction would be burdensome to •the defendant.
When the final decree of the chan'Cellor is looked into in connection with .-all the testimony, it will be readily seen that he “balanced the conveniences” and refused to enjoin the defendant from all 'work on steel vessels. Plaintiffs cite a -number of cases for this proposition. .'None of the cases are from Florida however. It is quite true that some of the states refuse to follow the doctrine of 'balancing the conveniences and others qualify it sharply. 66 C.J.S. Nuisances § 118 page 890, but Florida does accept it, City of Lakeland v. State ex rel. Harris, 1940, 143 Fla. 761, 197 So. 470.
In another point under their cross- . assignment of errors the plaintiffs urge that the zoning ordinance of the City of Riviera Beach was adopted on May 12, 1948, and they also alleged at the time of the adoption of the ordinance substantially all of the work being done in the ' boatyard was done on wooden boats which • did not create loud and offensive noises. The plaintiffs then take the position that the change in the defendant’s mode of . doing business from work on wooden vessels to work on steel vessels makes out a case of the defendant’s extending his mode of work beyond that which he was doing before the ordinance was passed. The ordinance was passed long after the boatyard was built and there was a provision allowing non-conforming users to continue their business, which could reasonably be construed to. include the defendant, and the chancellor did not find the defendant to be in violation of such ordinance. We think that the chancellor was correct in so holding.
Affirmed.
ALLEN, Acting Chief Judge, and GERALD, LYNN, Associate Judge, concur.