SEABOARD AIR LINE RAILWAY, A CORPORATION, AND THE
FLORIDA WEST SHORE RAILWAY, A CORPORATION, APPEL-
LANTS, v. SOUTHERN INVESTMENT COMPANY, A CORPORA-
TION, APPELLEE.

1.  The allegation in a bill of complaint that the complainant
    is the owner and seized in fee of four blocks of land
    described, and that said blocks of land adjoin and abut
    on a public thoroughfare known as Stebbins avenue in
    the town of Manatee, states a *prima facie* case of the own-
    ership of the soil to the middle of the street in front of
    said blocks of land; and, together with the further show-
    ing by said bill of complaint that two of these blocks of
    land lie on one side of said avenue directly across from
    and opposite to the other two blocks of land on said
    avenue, is a sufficient allegation and showing that the
    complainant's ownership extends across the whole street.

2.  Where the fee in the street is in the abutting owner, and
    the public have only an easement in the street or high-
    way, the laying of a steam railroad track along said
    street on his soil without his consent and without taking
    and paying just compensation therefor, is an unlawful
    appropriation of the property of such owner, and the
    abutting owner has all the remedies of any other owner
    of the soil, and an injunction will lie to restrain the
    taking possession of the street until payment be made
    therefor or secured to him by deposit of money.

3.  The remedy by injunction is a preventive one only, but
    when there is a continuance of the injury against which,
    before the act was committed, an injunction might have
    been granted, and a right to continue the injury is
    claimed by the aggressor, an injunction may, in a proper
    case, be granted to restrain such continuance.

4.  Where the allegation in a bill for an injunction, and the

affidavit in support thereof, do not assert simply the legal conclusion that notice to the defendant of the application for injunction will accelerate the injury complained of, but show further that, before said application could be heard, the defendants would be able to lay their track and have their cars in operation over the land of complainant, a sufficient reason for dispensing with notice of the application for injunction is made to appear.

5. A bill for injunction is properly verified by the solicitor for complainant, where his affidavit is positive and direct to all the allegations of the bill.

This case was decided by Division B.

Appeal from the Circuit Court for Manatee County.

The facts in the case are stated in the opinion of the Court.

*George P. Raney* and *J. B. Singeltary*, for Appellants.

*John P. Wall*, for Appellee.

PARKHILL, J.: On the 7th day of September, A. D. 1906, appellee, filed its bill of complaint against appellants, alleging as follows: "Southern Investment Company, a corporation organized and existing under the laws of the state of Delaware, by John P. Wall, its solicitor, brings its bill against the Florida West Shore Railway, a corporation organized and existing under the laws of the state of Florida, and the Seaboard Air Line Railway, a corporation organized and existing under the laws of Vir-

ginia; and thereupon your orator complains and says: That your orator is the owner and seized in fee of the following described real property in the county of Manatee and state of Florida, to wit: Blocks sixteen (16), seventeen (17), twenty (20) and twenty-one (21) of the Southern Investment Company's subdivision according to the map or plat thereof, recorded in the office of the clerk of the circuit court of Manatee county, Florida, on the fourth day of May, A. D. 1903, in plat book No. 1, on page 155; which said real property adjoins and abuts on a public street or thoroughfare in the town of Manatee, which street or thoroughfare is known and designated as Stebbins avenue, as will be more particularly shown by the blue print hereto attached and made a part of your orator's bill of complaint; that the Florida West Shore Railway is organized and incorporated for the purpose of constructing and operating a railroad for the transportation of passengers from a point at or near Turkey Creek, in the county of Hillsborough and state of Florida, through the counties of Hillsborough and Manatee, to a point on the gulf coast of the state of Florida, below the said town of Manatee, and the property so owned by your orator; and that the Seaboard Air Line Railway is organized and incorporated for the purpose of maintaining a trunk line of railway for the transportation of passengers and owns and controls a line of railway from some point in the state of Virginia, running southwardly through the states of Virginia, North Carolina, South Carolina, Georgia and Florida, to Turkey Creek, in the state of Florida, and by lease or some other arrangements, the exact terms of which are unknown to your orator, the said Seaboard Air Line Railway controls and operates

the line of railway owned by the said Florida West Coast Railway.

Your orator further represents unto your honor that the defendants have unlawfully and forcibly entered in and upon said Stebbins avenue, adjoining to and in front of the said real property of your orator, above described, for the purpose of constructing a spur track in and upon the said Stebbins avenue, from the town of Manatee to the town of Bradentown, and the said defendants propose to operate over said spur track its engines and cars for the transportation of passengers and freight; and that the said defendants have dug up the surface of said Stebbins avenue, and are now engaged in making excavations in said avenue, and have so occupied and obstructed said avenuue as to permanently impair the use of said avenue as a public thoroughfare, and especially to prevent your orator, its officers, agents and employees from going to and from its said real property over along said avenue, to the great and irreparable injury of your orator's said property.

Your orator charges that your orator has never consented to the location or construction of a railway of any kind in and along said avenue, that the damage to the land of your orator abutting on said avenue, on account of the location and construction of said proposed railway has not been ascertained and paid to your orator as required by law; that if the said location and construction of said railway upon said avenue is not prohibited and its location and construction is not restrained, your orator will sustain irreparable injury to the damage to its said real property aforesaid, and adequate remedy cannot be afforded to your orator by an action for damages.

Wherefore your orator prays that the defendant may be perpetually restrained or enjoined from entering into or upon said avenue for the purpose of locating and constructing or operating a railway therein, adjoining or in front of your orator's said real property, or from digging up or subverting the soil, surface or paving of said Stebbins avenue, or from doing any other act in said avenue intending to obstruct in any way the free and common use thereof, as the same has been enjoyed, and that in the meantime a temporary injunction may be allowed, restraining the said defendants, their associates, counselors, attorney, solicitors, agents, contractors and servants and all persons acting in the aid or assistance of them or either of them from obstructing said avenue adjoining to or in front of your orator's said property in any way, and especially from digging in said avenue, and from locating or constructing any railway therein, and for such other and further relief as to the court may seem just and proper."

The bill was sworn to in the following affidavit:

"State of Florida,
County of Hillsborough.

I hereby certify, that before me, the undersigned authority, personally appeared John P. Wall, who being first duly sworn, deposes and says: That he is the solicitor for the Southern Investment Company, the complainant in the foregoing bill of complaint, and he further says that the statements and allegations contained in the foregoing bill of complaint are true, and that unless immediate remedy is afforded the said complainant will suffer irreparable injury.

Affiant further says that to give the defendant notice

of the application for a temporary injunction would accelerate the injury apprehended, and that before said application could be heard, the defendants would be able to lay their track and have their cars in operation over that part of the said Stebbins avenue, upon which the complainant is an abutting property owner.           John P. Wall.

Sworn to and subscribed before me this 7th day of September, A. D. 1906.

(Seal.)                      Grace H. Gardner.

Notary Public, in and for the State of Florida at Large."

Thereupon, on the 7th day of September, 1906, the chancellor made an order granting a temporary restraining order, whereby the defendant corporations were restrained until further order of the court, from obstructing the said Stebbins avenue, adjoining to and in front of the parcels of land described in the bill of complaint, and especially from digging in said avenue and from locating or constructing any railway therein, upon the giving of bond, &c.

From the order of the 7th day of September, 1906, an appeal was taken and made returnable to the present term of this court.

The errors assigned are: First, the court erred in granting the temporary injunction adjudged by said order against the defendants. Second, the court erred in making said injunctional order.

Appellants urge several reasons why the injunctional order appealed from should not have been granted.

I. It is contended that the injunctional order appealed from should not have been granted because "the bill does not show that the complainant's ownership, or the boun-

daries of its land, extends to the center of the street, or to the part of the street actually invaded by the defendant, or, in fact, further than the sides of the street upon which the invasion is being made, and consequently does not make a case of trespass or burden upon the land or property of the complainant."

We do not think this contention is well founded. This court has already held adversely to this contention of appellants. In Garnett v. Jacksonville, St. A. & H. R. Ry. Co., 20 Fla. 889, the bill of complaint alleged that the complainant "is the owner and seized in fee of a large piece or lot of land within the city of St. Augustine, and having an extensive front on said street on which it abounds." In the brief filed here in that case, counsel for appellants admitted that "there is no allegation in this case as to where the fee of the street is," but contended that "in such case, where complainant alleges that his lot bounds on the street, the fee will be presumed to be in him to the center of the street." On page 904 of the opinion, this court said: "So far as the title is concerned, it is presumed from the allegations of abutting proprietorship that the fee to one-half of the street is in the owner of the lot adjoining and bounded by the street." And so in Rawls v. Tallahassee Hotel Co., 43 Fla. 288, 31 South. Rep. 237, this court said: "The proprietor of lots abutting on a public street is presumed in the absence of evidence to the contrary to own the soil to the center of the street." See, also, Jacksonville, T. & K. W. Ry. Co. v. Lockwood, 33 Fla. 273, 15 South. Rep. 327, where this court said: "The abutting proprietor is *prima facie* owner of the soil to the middle of the highway, subject to the easement in favor of the public." We think, therefore, the allegation here that

the complainant is the owner, and seized in fee, of the four blocks of land described, and that said blocks of land adjoin and abut on a public thoroughfare known as Stebbins avenue, in the town of Manatee, states a *prima facie* case of the ownership of the soil to the middle of the street in front of said blocks of land, and, together with the further showing by the blue prrint that two of these blocks of land lie on one side of said avenue directly across from and opposite to the other two blocks of land on said avenue, is a sufficient allegation and showing that the complainant's ownership extends across the whole street, and to the part of the street actually invaded by the defendants.

II. Another reason urged by appellants why the injunctional order appealed from should not have been granted is as follows: "If the bill shows any cause of action it is only one of a public nuisance to be abated by a suit in behalf of the state, and does not show that it operates as a special and peculiar injury to the complainant, either in its individual property, or its right to the use of the street, so as to give it an individual cause of action." Appellee, who was complainant below, admits "that this is not a suit instituted for the purpose of abating or restraining a public nuisance," but contends that "the injunction is prayed for under the constitutional provision which provides that no private property nor right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money." Misc. Prov. section 29 of the constitution of Florida, of 1885.

We have here presented, then, the question whether the owner of a lot on a public street and the owner of the fee

in the soil of the street has such an interest in the street as to require condemnation, or his consent, before the street can be used and occupied by a steam railroad company for constructing its tracks and operating its trains on the street and on his soil without authority of law; and whether an injunction will lie to restrain the taking possession of the street until payment be made or secured by the deposit of money.

At the very threshold of our investigation we are confronted with the decision by this court in Garnett v. Jacksonville, St. A. and H. R. Ry. Co. *supra*: "The construction of a railway to be operated by steam along the streets of a municipal corporation to be used for a private purpose on a line of route not authorized by the charter of the company proposing to construct it, and authorized only by the municipal corporation in a resolution clearly beyond its powers, may be a public nuisance. But if so, it is to be abated by a suit in behalf of the state. The owner of the land or lots abutting upon the street over which the railway is proposed to be constructed has not an equity to enjoin its threatened construction as a public nuisance, operating to his special and peculiar injury, where the road intended to be constructed is an ordinary surface railway to be operated by steam."

The respect we entertain for the ability of the learned justice who wrote that opinion would cause us to hesitate before we take issue with him on this question. The importance of the subject, however, to the owners of property abutting on public streets, as well as the railroad companies in this state, demands careful investigation and consideration on our part.

On page 904 of the Garnett case the court said: "We

will not stop to discuss the question, but will simply say that it is settled law here and elsewhere that an individual cannot recover damages at law, or have relief in equity, against even an admitted public nuisance unless he makes a case of special and particular injury to himself. He must sustain an injury not common to the public." "The construction of the road is, therefore, without authority either from the state, through the legislative branch of the government, or from the municipal corporation. Unquestionably this is a public nuisance. It is unlawful and there is no doubt that it may be made the subject of proper proceedings to abate it at the hands of the state in the local jurisdiction in which it is situated. I can find, however, no authority for the conclusion which I would like to reach that an abutting proprietor under the allegations of this bill as to the character of the contemplated structure has a right to enjoin its threatened construction even though it be a railway unauthorized by law. The question of compensation for property taken, if there is a taking threatened here, is entirely distinct from the right to enjoin the construction of a railway. One permits its construction and makes compensation for a contemplated taking of property, the other denies the right to construct, enjoins it and prevents its existence. One requires pay for what is done, the other prohibits its being done, with or without pay. The abutting proprietor here has the fee to the middle of the street, but his right, title and interest as against the public so long as it remains a street is a right of way in the street and a right to its continued use as a street. The authorities sustain the proposition that even though the contemplated railway be a public nuisance, as unauthorized by law, the abutting

proprietor has no right of action if the structure con-templated is an ordinary surface railway operated by steam upon a street in front of property owned by him. The structure here threatened is not alleged to be other than an ordinary surface railway operated by steam, and while there is conflict of authority as to whether there is a *taking* of property as distinct from an *injury* to it in such case, yet as to the question whether it is a nuisance, abatable at the hands of an individual, the au-thorities seem to be uniform in announcing that he has no such right."

It must be observed that the case above quoted from was decided here just a year prior to the framing of our present constitution with its peculiar inhibition against the taking of a right of way without prior payment of compensation.

In the case of the Florida Southern. Railway Co. v. Brown, 23 Fla. 104, 1 South. Rep. 512, this court held that where a person owns a lot on a public street of a town or city and the fee in the soil as far as the center of the street, the laying of a railroad track along said street, wholly or partly, on his soil without his consent, and without taking and paying just compensation therefor, in accordance with the statute regulating the method by which private property may be taken for public use, is an unlawful appropriation of the property of such owner.

The abutting proprietor has the fee to the middle of the street. He is the owner of the soil to the middle of the highway. Garnett v. Jacksonville, St. A. & H. R. Ry. Co., *supra*; Jacksonville, T. & K. W. Ry. Co. v. Lockwood, *supra*.

In Protzman v. The Indianapolis and Cincinnati R. R.

Co., 9 Ind. 467, the court said: "In Haynes v. Thomas, 7 Ind. 38, it is decided that the right of the owner of a town lot abutting upon a street to use the street, is as much property as the lot itself; that it is appurtenant to the lot, and is protected by the constitution. It can not be taken away without compensation. The lot, and the street adjoining, then, as to the owner of the former, would seem to constitute but one piece of property, and an injury to the latter would seem to be an injury to the former—to the whole property."

While the abutting proprietor has the fee to the middle of the street, his right, title and interest as against the public so long as it remains a street is a right of way in the street and a right to its continued use as a street. His ownership of the soil to the middle of the street is subject to the easement in favor of the public. Jacksonville, T. & K. W. Ry. Co. v. Lockwood, *supra;* Garnett v. Jacksonville, St. A. & H. R. R. Co., *supra.*

In Theobold v. Louisivlle, N. O. &. T. Ry. Co., 66 Miss. 279, 6 South Rep. 230, it is said: "The weight of judicial authority undoubtedly is that where the public have only an easement in the street, and the fee of the soil of the street is retained in the abutting owner, under the constitutional guaranty of private property, a steam railroad cannot be lawfully constructed and operated thereon, against his will, and without compensation;" and the court cites in support thereof, Lewis, Eminent Domain, sections 113, 115; 1 Hare, Const. Law, 362; Mills, Em. Dom. (2nd ed.), section 204; 2 Dill. Mun. Corp. (3rd ed.), section 725. And that court goes on to say: "If the rights of the abutting owner may be taken from him without his consent, and without compensation, 'a system has

been inaugurated,' says the court of appeals of New York, 'which resembles more nearly legalized robbery than any other form of acquiring property,'" and cites Lahr v. Railroad Co., 104 N. Y. 268, 10 N. E. Rep. 528.

Now as to the remedy of the abutting owner, where the soil of the highway or street passing over his land is appropriated to, and occupied for, a use not falling within the easement granted to the public. The supreme court of Indiana in Cox v. Louisville, New Albany & Chicago R. R. Co., 48 Ind. 178, text 192, says: "We are justified by the authorities, we think, in the statement that he has all the remedies of any other owner of the soil. In so deciding, we are aware that the ruling is contrary to several decisions heretofore made by this court." The propositions already decided necessarily lead us to this conclusion, and we can see no good reason why we should not adopt it. It seems to us that it is necessary to the proper application and harmonious operation of the principles already enunciated; for if the abutting proprietor is the owner of the fee, subject only to the easement in in the public, and if the occupancy of the soil by the railroad is an appropriation, not authorized by the grant of the easement, it must follow that the owner should have his remedy to the extent of the injury, as fully and completely as any other owner of the soil. In Moody v. Jacksonville, T. & K. W. Ry. Co., 20 Fla. 597, this court said that the granting of an injunction was proper to restrain the defendant company from appropriating to the construction of its road certain land of the plaintiff, not a street, without her consent and without previous condemnation of her land. We think, therefore, that an injunction may be granted to restrain the defendant com-

pany here from taking possession of and permanently appropriating the street in front of the abutting owner, owning the fee therein until compensation therefor shall be first made to the owner or first secured to him by deposit of money.

In speaking of the remedies to prevent the laying or operating of commercial or steam railroads in streets, Lewis, in his treatise on the law of eminent domain, says, in section 635: "Upon this subjecct the authorities are conflicting. It is generally held that, where the fee of the street is in the abutting owner he may have the same remedies to prevent the use or occupation of his land as though the street did not exist, and consequently may enjoin its use by a railroad company until the right has been lawfully acquired by condemnation or otherwise. In Florida and West Virginia a contrary doctrine is held." The Florida case cited in support of the exception to the general rule is Garnett v. Jacksonville St. A. & H. R. Ry. Co. already referred to elsewhere in this opinion. After a thorough examination of the authorities we are fully persuaued that, upon reason and principle, we should follow the great majority of the courts in holding that where the fee of the street is in the abutting owner, he may have the same remedies to prevent the use or occupation of his land as though the street did not exist. As we have seen, the abutting owners' right to use the street is as much property as the street itself. As we have seen, the abutting proprietor's ownership of the soil to the middle of the highway is subject to the easement in favor of the public—not in favor of a part of the public, an individual or a corporation.

In speaking of the use or occupation of a street by a commercial or steam railroad, Lewis on Eminent Domain,

Vol. 1, section 111, says: "To us it seems so clear that a railroad is foreign to the legitimate uses of a highway, that we never have been able to understand how a court could reach a contrary conclusion. Highways are estab-lished to accommodate the public in traveling from place to place. From time immemorial, prior to the discovery of steam, they were for the common use of every citizen, by any means of locomotion he chose to select. They were not used by one person in any way which was not open to all. No one had a private right or any exclusive privilege therein. It was free to all upon like conditions. Such being the character of the public highway, it was subject to use by any new means of locomotion which could be employed by all the public, and was not destructive of the old methods of travel. A carriage propelled upon the ordinary surface of the road by steam or electricity would be just as legitimate as a carriage drawn by horses. Such use would be equally open to every citizen. The railroad does not fall within the scope of such uses. It requires a permanent structure in the street, the use of which is private and exclusive. It gives to an individual or corpor-ation a franchise and easement in the street, inconsistent with the public right. To hold that a railroad is one of the proper and legitimate uses of a street leads to the absurd consequence that a street might be filled with par-allel tracks which would practically exclude all ordinary travel and still be devoted to the ordinary uses of a high-way. The law ought not to tolerate such a consequence." See also 1 Hare, Const. Law, 362; Cooley Const. Lim. 678.

Judge Dillon, Municipal Corp., Vol. 2, p. 657, says; "If the fee in the streets or highways is in the public, or in the municipality in trust for the public use, and is not in the abutter, the doctrine seems to be settled that the legis-

lature may authorize them to be used by a railroad company in the construction of its road, without compensation to adjoining owners, or to the municipality, and without the consent and even against the wishes of either. But where the public have only an easement in the street or high, it has been generally, but not always, held that against the proprietor of the soil the use of the street or highway for the purpose of a steam railroad is an additional burden, which under the constitution of the different states, cannot be imposed by the legislature without compensation to such proprietor for the new servitude."

In Theobold v. Louisville, N. O. & T. Ry. Co., *supra*, it is well said: "The laying out of a public street creates two co-existent rights—one belonging to the public, to use and improve the street for the ordinary purposes of a street; the other to the abutting owner to have access to and from his property over the street, and to make such use of the street as is customary and reasonable. Both are valuable and the one as inviolable as the other. It would be as unjust and unwarrantable for the public to use and appropriate the street so as to impair or destroy the rights of the abutting owner, without his consent, and without compensation, as it would be for him, by a like course of conduct to impair or destroy the rights of the public. So that it appears that the abutting owner has special interests and rights in a public street, which are valuable and indispensable to the proper and beneficial enjoyment of his property. * * * If the street is needed for the purpose of a railroad, or for any other purpose inconsistent with the ordinary uses of a public street, the rights and interests of the abutting owner must be obtained, with his consent, or by the exercise of the right of

eminent domain, as in other cases of taking private property for public use." This being so, we see no good reason to allow the property of the abutting owner, against his will, to be first taken, and himself turned over to such vexatious litigation to obtain compensation as he may meet afterward. Our constitution declares that compensation shall be first made to the owner before private property shall be appropriated.

In Graham v. Connersville and New Castle Junction R. R. Co., 36 Ind. 463, the court said : "There must be superadded, in order to make the remedy at all efficient, an injunction to stay the taking until the damages shall be paid. But this is not provided for by the statute. It is an appeal to the extraordinary power of the court exercising equity jurisdiction."

In Ford v. Chicago & N. W. R. R. Co., 14 Wis. 609, S. C. 80 Am. Dec. 791, it is held: "Railroad company may be restrained by injunction from laying its track in public street, without first taking steps to acquire the right of way by the assessment and payment of damages to the owners of lots bounded by the street." See, also, The Morris and Essex Railroad Company, and the Delaware, Lackawanna and Western Railroad Company v. The Hudson Tunnel Railroad Co., and Haskins, 25 N. J. Eq. 384.

The ninth headnote in the case of The Attorney General ex rel. Stickle and others v. The Morris and Essex Railroad Company, and Pruden v. The Same, 19 N. J. Eq. (4 C. E. Green) 386, is as follows: "The construction of a railroad operated by steam upon a public highway without authority of law, is a nuisance which will be restrained by injunction." On page 392 of the opinion, it

is said: "An obstruction or nuisance to a public high-
way is an injury to the public, for which an information
in the name of the attorney general is the proper remedy."
On page 393, the chancellor says: "The bill filed by Bram
Pruden presents the additional question whether a suit can
be maintained by an individual for a nuisance in the public
road or street, because it narrows and obstructs the street
in front of his premises. I am inclined to think that there
is in such case a special injury to the individual different
from that to the public at large. * * * Pruden is entitled
to maintain a suit in his own name and to have the in-
junction applied for in his suit." In the case of Cox v.
Louisville, N. A. & C. R. R. Co., 48 Ind. 178, there was no
allegation that the real estate abutting on the street was
occupied by complainant, or was built upon or improved in
any way. The court said: "The construction of a railroad
track along a street, on which locomotives and trains of
cars are used, is a new use or appropriation of the soil
and entitles the owner of the fee to an action for dam-
ages and to all other remedies provided by law for the
protection of rights in real property, and if the railroad
company enters into possession thereof, without first hav-
ing the damages assessed and tendered, the owner may
maintain an action to recover possession of the land; and
he may enjoin the use of the land by the railroad company
until his damages are assessed and tendered."

In Hodges v. Seaboard & R. R. Co., 88 Va. 653, 14 S. E.
Rep. 380, the court held that owners of lots abutting on
streets own the fee in the land to the middle of the street
subject to the rights of the public to travel over it. Lo-
cating a railroad track on the street is an additional

54—SC

burden, which cannot be imposed without compensation to the owner, and the remedy for illegal entry by a corporation on lands is by injunction. See, also, Schurmeier v. St. Paul & Pacific R. R. Co., 10 Minn. 82; High on Injunctions, section 392, et seq.; Manchester Cotton Mills v. Manchester, 25 Gratt. (Va.) 825; Fanning v. Osborne, 34 Hun. (N.Y.) 121; Story v. New York Elevated R. R. Co., 90 N.Y. 122; Mahady v. Bruswick R. R. Co., 91 N. Y. 148, text 153; Wilkins v. Town of Graffney City, 54 S. C. 199, 32 S. E. Rep. 299.

In coming to the conclusions here announced we have not overlooked the difference between the provisions of our constitution which provide, section 12, Declaration of Rights, "nor shall private property be taken without just compensation," and section 29, Misc. Prov., "no private property nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money;" and those provisions of the constitutions of other states which provide, as in South Dakota, Art. 6, section 13, "private property shall not be taken for public use, or damaged without just compensation," &c., and in Nebraska, Art. 1, section 21, "the property of no person shall be taken or damaged for public use without just compensation therefor." We hold that, under the provisions of our constitution, a commercial or steam railroad on a street, being foreign to such purposes, is an interference with the adjoining owner's proprietary rights in the soil, and an appropriation or taking of an estate or interest in his land, for which he is entitled to compensastion as in other cases. 1 Lewis, Em. Domain,

section 113, and cases cited, too numerous to mention here.

III.   It is contended further that "the act complained of had been consummated before the injunction was granted or the bill was filed." The act complained of is the building of a spur track in and upon Stebbins avenue and the operation over said spur track of engines and cars for the transportation of passengers and freight. It is true the bill alleges that the defendants have unlawfully entered upon said avenue and have dug up the surface of said avenue, but the bill also alleges that this has been done for the purpose of constructing the spur track and shows that the spur track has not been completed; because the bill also alleges that defendants "are now engaged in making excavations in said avenue." The allegations of the bill show further that the injury complained of, the operation over the spur track of engines and cars, is a continuing one; and injunction will lie. Smith v. Davis, 22 Fla. 405; Cox v. Louisville, New Albany and Chicago R. R. Co., 48 Ind. 178.

IV.   It is contended further that "the bill and affidavit do not, nor does either disclose sufficient reason for dispensing with notice to the defendants of the application for the temporary injunction." The affidavit does not simply assert the legal conclusion that notice to the defendant of the application for injunction will accelerate the injury complained of, but the bill and affidavit show further that before the said application could be heard the defendants would be able to lay their track and have their cars in operation over that part of Stebbins avenue, upon which complainant is an abutting property owner.

V.   Again, it is contended that "the bill it not sworn to

by any authorized officer or proper representative of the complainant."

The bill is sworn to by the solicitor for the complainant, and he swears that the allegations contained in the bill are true. This affidavit is positive and direct to all the allegations of the bill and such an affidavit by counsel for complainant is sufficient. Bowes v. Hoeg, 15 Fla. 403; 22 Cyc. 932, and cases cited.

The decree appealed from is affirmed, at the cost of the appellants.

TAYLOR AND HOCKER, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.