213 So.2d 23 (1968)
Reginald C. KENDRY and Evaline M. Kendry, His Wife; George Waters and Louise Waters, His Wife; Donald N. Harnish and Mildred G. Harnish, His Wife; and Mae D. Bridges, a Single Woman, Appellants,
v.
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, Appellee.
No. 1045.
District Court of Appeal of Florida. Fourth District.
July 31, 1968.
*24 Herbert L. Heiken, Miami, for appellants.
P.A. Pacyna, Tallahassee, for appellee.

ON PETITION FOR REHEARING
PER CURIAM.
This is an appeal from a final judgment in favor of the defendant, State Road Department of Florida, predicated on a finding by the trial court that the plaintiffs' second amended complaint failed to state a cause of action.
The facts as stated in this complaint are recited herein.[1] The plaintiffs own tracts of real property in Brevard County, Florida. Each tract is specifically described by exhibits to the complaint. Each tract was bounded on the east by the Indian River, a navigable water.
U.S. Route 1, formerly designated as State Road 4, and also known as the Dixie Highway, runs in a north-south direction through the plaintiffs' land. From plaintiffs' predecessors in title, the State of Florida had acquired two written easements for highway purposes over the plaintiffs' tracts. Copies of these easements are attached to the complaint. The easements are described as "extending 250 feet at right angles on east side of the present existing centerline of said road." The reference to the "present existing * * road" was to State Road No. 4. It is *25 impossible to determine solely from the written description in the easements and without reference to a survey whether or not the easements extend to the waters of the Indian River.[2]
One of the defendant's easements contained a restriction which reads: "This right of way is given with stipulation that the new fill and roadbed will not be any higher than the present Dixie Highway." This easement was dated 10 August 1939 and traversed the properties of the plaintiffs Harnish and Kendry. The other easement dated 9 August 1939 traversed the properties of plaintiffs Waters and Bridges and contained a restriction reading as follows: "It is agreed that the elevation of any additional or new paving across this right of way will not be higher than the elevation now established."
Beginning in the year 1961 the defendant, relying on these easements, widened U.S. Route No. 1 and, despite the restriction in the easements, increased the elevation of the road on the easements by four or five feet.
In constructing the widened highway and related drainage facilities, the defendant has rendered the plaintiffs' properties useless for residential purposes because such construction has caused and "always will cause" great amounts of water from rainstorms and natural sources to flow upon the plaintiffs' properties and into their residences.
Also in widening the highway the defendant has filled submerged lands in the Indian River a distance of approximately sixty feet east of and adjacent to the plaintiffs' east boundary lines. The defendant claims title to the filled land.
The complaint demands a mandatory injunction to require the defendant to exercise its power of eminent domain as a means of making restitution to the plaintiffs for the asserted taking of plaintiffs' property. The broad question before this court is whether or not the complaint states a cause of action.
The complaint raises three questions of law which are:
(1) where the state builds a road on a private citizen's land, basing its right to use such land on written easements which contain a restriction on the elevation of the road, does a substantial violation of the restriction constitute a taking under Section 12 of the Declaration of Rights of the Florida Constitution;
(2) where the state constructs a road and its drainage facilities in such a manner as to cause rainwater and water from other natural sources to flow upon abutting privately held land and into residences thereon in such quantities as to render the land useless for residential purposes, has a taking occurred within the meaning of Section 12, Declaration of Rights, Florida Constitution; and
(3) where the state, in the course of highway construction, fills bottom land in a navigable stream adjacent to riparian property of a private citizen and claims title to the fill, does a taking occur with respect to the riparian rights of the upland owner.
From the complaint no basis appears for questioning the validity of the restrictions imposed on the easements. Generally, a landowner may restrict an easement in any way he sees fit, Russell v. Martin, Fla. 1956, 88 So.2d 315. Had the easements been conveyed to a private owner, *26 it is clear that the easement holder would have had no legal right to increase the burden of the servient estate beyond that contemplated at the time of the granting of the easements, Crutchfield v. F.A. Sebring Realty Co., Fla. 1954, 69 So.2d 328. We see no reason for applying a different rule to the state.
When the state raised the road four to five feet, this was a substantial violation of the restriction and had the effect of imposing an additional burden on the servient estate. Such conduct has been recognized as involving a taking under the Florida Constitution. Seaboard Air Line Ry. v. Southern Investment Company, 1907, 53 Fla. 832, 44 So. 351, 355, 357; Jarrett Lumber Corporation v. Christopher, 1913, 65 Fla. 379, 61 So. 831; and Moore v. Choctawhatchee Electric Co-operative, Inc., Fla.App. 1967, 196 So.2d 788. In Seaboard Air Line Ry. v. Southern Investment Company, supra, the court held that the use of a street by the defendant for a street railway, where the public had an easement in the street only for highway purposes, was an additional burden on the servient estate which was not authorized by the highway easement and constituted a taking requiring compensation.
In the case of Moore v. Choctawhatchee Electric Co-operative, Inc., supra, the import of the holding was that if the defendant electric company, by cutting timber, had exceeded the rights granted to it by an easement to operate electric lines, an action would lie for inverse condemnation.
A holding that fails to characterize the conduct of the state as set forth in the complaint as something less than a taking would permit the state to acquire restricted highway easements, pay less money for the easements by virtue of the restriction, and then disregard the restriction with impunity. Such a holding would not be consistent with Section 12 of the Declaration of Rights, Florida Constitution, F.S.A., which in part reads as follows:
"* * * nor shall private property be taken without just compensation. * *"
It is, therefore, our conclusion that the allegations in the complaint set forth facts indicating a taking and a right in the plaintiffs to an inverse condemnation.
We are mindful of the case of Bowden v. City of Jacksonville, 1906, 52 Fla. 216, 42 So. 394, and the long line of cases following it which hold that damages suffered by a landowner by reason of a change in grade of an adjacent street are damages for which no recovery is available under the constitution. The rationale of these decisions is a very sound one. Where a person purchases property abutting a street he must realize that he takes his property subject to the right of the government to improve the street by altering its grade, paving it and making such other improvements as may be necessary. The rationale of the Bowden case and others following it does not apply where the change of grade is in violation of the terms of the very easement under which the state occupies the street and results in a substantially increased burden on the servient property. In the Bowden case the court expressly recognized this by the following language found at page 396 of the opinion:
"* * * The owner of such a lot takes and holds it subject to the right of the state, or any duly authorized governmental agency acting for it, to improve the street for public use by altering the grade of the street, by the erection of a viaduct thereon, or otherwise, for street purposes; and, in the absence of legislation or a valid contract, the owner has no right of action against a city authorized by law to grade and improve the street for injury to the lot or property thereon * * *." (Emphasis added.)
With regard to the second question raised by the complaint, it appears to be the law in Florida that construction by the state which causes flooding on abutting private property may constitute a taking where the flooding is a permanent invasion *27 of land amounting to an appropriation. State Road Department of Florida v. Tharp, 1941, 146 Fla. 745, 1 So.2d 868; Arundel Corporation v. Griffin, 1925, 89 Fla. 128, 103 So. 422; and Dudley v. Orange County, Fla.App. 1962, 137 So.2d 859. This rule is easier to state than to apply. The problem of application involves a determination of what constitutes permanent flooding and an appropriation of property as distinguished from damage to property.
In Arundel Corporation v. Griffin, supra, it appeared that the lands there involved were low and peculiarly subject to overflow at times of unusual rain. It was concluded by the Florida Supreme Court that the construction of dams by the Everglades Drainage District did not constitute a taking where no permanent flooding was caused by such construction.
In Dudley v. Orange County, supra, the flooding involved appeared to have been in part only due to the construction of dams by the county. It also appeared impermanent. The court, therefore, concluded that no taking was involved.
In State Road Department v. Tharp, supra, the State Road Department had constructed fill across a navigable stream which flowed through the plaintiff's land. The fill was constructed as a base for a bridge. The construction of the fill and the bridge had the effect of raising the level of water in a millrace on the plaintiff's property and thereby decreasing by about fifty per cent the capacity of the plaintiff's water powered mill. The Court held that this was a taking under Section 12 of the Declaration of Rights, Florida Constitution. It appears to us that State Road Department v. Tharp clearly establishes two propositions. The first is that flooding of property by water can under certain circumstances constitute a taking under Section 12 of the Declaration of Rights. Secondly, to constitute a taking, the flooding need not completely destroy all value in the property flooded. It will be recalled that the flooding which was the subject of consideration then before the Court merely reduced the mill's capacity by about fifty per cent. The Tharp case impliedly recognizes that property in land is more than the tangible thing, but includes the right to possession and use in any legal manner.[3]
Turning now to the facts in the case before us, the complaint alleges that the plaintiffs' property is subject to flooding whenever rains occur. Such flooding is not permanent in the sense that it involves a body of water forever present on the plaintiffs' property, but it is permanent in the sense that rain is a condition that is reasonably expected to continually reoccur in the future.
With regard to the extent of the appropriation occasioned by the flooding, the complaint clearly alleges that the flooding has rendered the properties useless for residential purposes. It appears to us that these are sufficient allegations to indicate that substantial property rights to which the plaintiffs are entitled as fee owners have been taken as a direct result of the construction by the State Road Department and to demonstrate a taking under Section 12 of the Declaration of Rights.
Regarding the third question, the allegations in the complaint and the attached exhibits state that the plaintiffs' tracts border on the Indian River, a navigable water. These allegations make a prima facie showing that riparian rights are appurtenant to the plaintiffs' land. F.S. Section 271.09, 1967, F.S.A. The complaint also states that the defendant filled submerged lands in the river east of the *28 new highway and has thereby deprived plaintiffs of such riparian rights.
Riparian rights are property rights that may not be taken without just compensation. Thiesen v. Gulf, F & A Ry., 1918, 75 Fla. 28, 78 So. 491, 507; Brickell v. Trammell, 1919, 77 Fla. 544, 82 So. 221, 227. The allegations in the complaint are sufficient to show a complete appropriation of the plaintiffs' riparian rights and thus a taking without just compensation. It may well be that the defendant has adequate defenses to this claim, but such are not before us now.[4]
For the foregoing reasons, a rehearing in this cause has been granted, the original opinion of this court is withdrawn, and this opinion is substituted therefor.
The final judgment is reversed and the cause remanded for further proceedings are not inconsistent herewith.
REED, J., and HEWITT, ROBERT S., Associate Judge, concur.
CROSS, J., dissents, with opinion.
CROSS, Judge (dissenting).
I respectfully dissent. I do not agree with my esteemed colleagues that the final judgment appealed herein was improvidently entered and should be reversed. I am of the opinion that the majority's decision is in direct conflict with decisions of the Florida Supreme Court, the appellate courts of this state and the majority of jurisdictions throughout the country.
The plaintiff-owners in this cause of action seek inverse condemnation and allege in their amended complaint that they are the owners of certain properties and that the Defendant-State Road Department of Florida, within its scope of constructing roads, and in particular the construction of U.S. # 1, which runs over and through the plaintiffs' properties, did substantially alter and raise the elevation of U.S. # 1, some four or five feet higher than the level of the existing highway. The plaintiffs further allege that the defendant relied on certain easements granting to it the right to widen the road. However, these easements contained a condition that the new highway would not be of higher elevation than the present or existing road. Plaintiffs state that this condition was violated, therefore, rendering the easements null and void. It is further asserted that, due to this act of the defendant, the plaintiffs' use and enjoyment of their properties have been infringed and that the raising of the road causes overflow of water onto their properties causing back-up of septic tanks. This condition, they assert, makes their property unfit for residential purposes. Plaintiffs also state that certain riparian rights have been taken away.
The court on two occasions granted motions to dismiss plaintiffs' complaint and allowed additional time for the plaintiffs to file an amended complaint. The final judgment shows that, subsequent to the presentation of argument on the motion to dismiss, plaintiffs were again granted leave to amend their second amended complaint. However, the plaintiffs advised the court that they did not desire to further amend. Final judgment was thereafter entered against the plaintiffs. Plaintiffs appeal from this final judgment.
The basic question for our determination is whether the allegations of the amended complaint are sufficient to state a cause of action and able to withstand a motion to dismiss. The gravamen of the charge is that there was a changing of grade of the highway and this, the plaintiffs assert, was a taking or appropriation of private property within the constitutional guaranty against such taking or appropriation without compensation.
*29 In Florida in order for the "taking" or "appropriation" of private property for public use under the power of eminent domain to be compensable, there must generally be a "trespass or physical invasion." Selden v. City of Jacksonville, 1891, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370; Weir v. Palm Beach County, Fla. 1956, 85 So.2d 865.
The Supreme Court of Florida in Weir stated that if the damage suffered by the plaintiff is an equivalent of a "taking" or an "appropriation" of plaintiff's property for public use, then our constitution itself recognizes the plaintiff's right to compel compensation. On the other hand, if the damage suffered is not a taking or an appropriation within the limits of our organic law, then the damages suffered are damnum absque injuria and compensation therefor by the defendants cannot be compelled.
Florida differs from several other states in that its constitution does not provide for just compensation to the property owner for "damage" to his property but only for the "taking" or "appropriation" thereof. See Florida Constitution, Declaration of Rights, § 12, and Article XVI, § 29, F.S.A.; Board of Public Instruction of Dade County v. Town of Bay Harbor Islands, Fla. 1955, 81 So.2d 637; 12 Fla.Jur., Eminent Domain, § 68.
The rule has been well settled and established in Florida that damages are not allowable to a property owner for a change in grade or other alteration in a street in which the public holds an existing easement for street purposes. See Jacksonville Expressway Authority v. Milford, Fla. App. 1959, 115 So.2d 778. The Florida courts have uniformly held that, although an abutting landowner may suffer consequential damages for the use of public lands by public authority, such is damnum absque injuria and therefore not recoverable by the landowner in absence of an actual physical taking by such public authority. See Bowden v. City of Jacksonville, 1906, 52 Fla. 216, 42 So. 394; Selden v. City of Jacksonville, supra; Weir v. Palm Beach County, supra; City of Tampa v. Texas Company, Fla.App. 1958, 107 So.2d 216; 12 Fla.Jur., Eminent Domain, § 88.
I am of the opinion here that there is a total absence of any unjustified entry upon the land owned by the plaintiffs. Construction and maintenance of a public improvement under the easement in question is such that any infliction of an injury upon the land of the plaintiffs did not constitute a taking of such land since the owners are not substantially ousted nor are they deprived of all beneficial use of the land affected. Acts accomplished here were done in the proper exercise of governmental powers and do not directly encroach upon the private property. Although they may impair its use, they do not amount to a taking of such property within the meaning of our constitutional provisions that private property shall not be taken for public use without just compensation being made.
A question does arise concerning whether or not the defendant misused the existing easements or violated the condition that the new highway would not be of higher elevation than the present or existing road, thereby causing a forfeiture, thus requiring the defendant to resort strictly to eminent domain proceedings.
It must be kept in mind that the courts do not favor forfeitures, and with this principle as a general rule, the use of an easement for an unauthorized purpose or the excessive use or misuse or violation of conditions thereof is not sufficient to cause a forfeiture of the easement unless such violation of the easement is willful and substantial, not merely minor and technical. See Ward v. City of Monrovia, 1940, 16 Cal.2d 815, 108 P.2d 425; Paul v. Blakely, 1952, 243 Iowa 355, 51 N.W.2d 405; Annotation, 16 A.L.R.2d 612, § 3, 78 A.L.R. 1222; 25 Am.Jur.2d, Easements & Licenses, §§ 102 & 107. I am of the opinion that, if there was any breach of this 1939 easement, the breach should be considered *30 merely technical and not substantial. It should be noted that the easement granted to the defendant was for the purpose of roadside improvement, including the flattening of slopes and shoulders, reducing side ditches to minimum depths, eliminating traffic hazards, and bettering roadside appearances for scenic purposes, and also to provide for the widening and modernization of pavement and four additional traffic lanes as construction funds are made available for such purposes. The defendant's use of the easement certainly was not inconsistent with the purpose for which it was granted, i.e., to provide for widening and modernization of pavement. Therefore, in my opinion there was no substantial or willful breach of the easement to create any forfeiture thereof.
Cases cited by the majority as showing a substantial violation of an easement (Seaboard Air Line Ry. v. Southern Investment Company, 1907, 53 Fla. 832, 44 So. 351; Moore v. Choctawhatchee Electric Co-operative, Fla.App. 1967, 196 So.2d 788) dealt with situations wherein the defendant was granted an easement for a specific purpose but used that easement for a purpose entirely different than that for which it was granted. In Seaboard Air Line Ry. v. Southern Investment Company, supra, the public had an easement in a street only for highway purposes and used that street for a street railway. In Moore v. Choctawhatchee Electric Co-operative, supra, an easement was granted to operate electric lines, and the defendant-electric company violated the easement by cutting timber. It is evident that the cases cited by the majority are of no import to the instant case.
Plaintiffs further allege in their amended complaint that the raising of the level of the highway has caused and will continue to cause great amounts of water from rainstorms and natural sources to flow upon the properties of the plaintiffs and that this repeated and continual overflow of water onto the properties causes an overflow of septic tanks located on plaintiffs' properties and on adjacent properties.
In Florida, in order for the flooding and the covering of earth and land to constitute a taking within the provisions of the Florida Constitution, the flooding must be a permanent invasion. See Arundel Corporation v. Griffin, 1925, 89 Fla. 128, 103 So. 422; Dudley v. Orange County, Fla. App. 1962, 137 So.2d 859; and Poe v. State Road Department, Fla.App. 1961, 127 So.2d 898. I am of the opinion that the plaintiffs had failed to allege sufficient facts to show that the flooding and the covering of the earth and land constitutes a permanent invasion.
It is elementary, of course, that on a motion to dismiss for failure of a complaint to state a cause of action, all allegations well pleaded are taken as true. This does not mean, however, that the courts will by inference on inference or speculation supply essential averments that are lacking. Ocala Loan Company v. Smith, Fla.App. 1963, 155 So.2d 711. While it is certainly expected that rain is a condition that will continually recur in the future, the facts alleged in the complaint are not sufficient to show the amount of rain which will cause a permanent invasion to the plaintiffs' property. Will the mere sprinkling of a shower cause such invasion, or does the land flood only when the heavens open and produce one, two, three or twelve inches of rain? Allegations by the plaintiffs that the increase of the side ditches has caused and always will continue to cause great amounts of water from rainstorms and natural sources to flow upon the properties of the plaintiffs does not in my opinion allege sufficient facts to show that the plaintiffs are substantially ousted and deprived of all beneficial use of the land affected.
I am of the opinion that the allegations in the complaint stating that the defendant has filled in certain submerged lands in the river east of the new highway, thereby depriving plaintiffs of riparian rights are insufficient to state a cause of action. Ocala Loan Company v. Smith, supra. In determining whether a taking of the property of *31 a riparian proprietor in the constitutional sense has been affected by an interference with his rights in the water or in the bed of a stream under legislative authority, the first step is to determine what his rights are. 2 Nichols, Eminent Domain, § 5.79. It is elementary that the pleader asserting that there has been a taking of riparian rights must affirmatively allege what rights he has and which were taken.
In order for riparian rights to attach to property, the land to which the owner holds title must extend to the ordinary high water mark of the navigable water, F.S. Section 271.09(1), 1967, F.S.A. A review of Exhibits A, B and C attached to the complaint and made a part thereof, i.e., the legal descriptions of the lands owned by plaintiffs Kendry, Waters and Harnish, leads me to the belief that the title of these plaintiffs to the land in question does not extend to the ordinary high water mark of the navigable water, and therefore as to these plaintiffs there are no riparian rights. See Axline v. Shaw, 1895, 35 Fla. 305, 17 So. 411.
Finally, I am of the opinion that the complaint as amended and pertaining to all of the plaintiffs asserts only indirect or consequential damages appertaining to plaintiffs' alleged riparian rights and therefore would not be considered as a "taking" within the applicable constitutional provisions. See Christman v. United States, 7 Cir.1934, 74 F.2d 112; Duval Engineering and Contracting Company v. Sales, Fla. 1955, 77 So.2d 431.
The plaintiffs' claim that, when the defendant wrongfully widened and constructed the present highway, it did so at a point where the then existing shoreline of the Indian River was located and that the defendant did simultaneously fill the submerged lands east of the new highway and thereby push the shoreline of the river some sixty feet eastward, that thereby the defendant has denied to the plaintiffs and unlawfully taken from their rights to lands bordering on the Indian River, together with their riparian rights inuring to the benefit by reason of their ownership of the said lands. The widening and constructing of the present new highway in the location selected by the State Road Department constitutes a decision within the realm of its authority as an administrative body. It has been held that the decision of an administrative body within the realm of its authority will be sustained unless fraud or abuse of discretion is clearly shown. Wilton v. St. Johns County, 1929, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488; Broward County Rubbish Contractors Association v. Broward County, Fla.App. 1959, 112 So.2d 898; 2 Nichols, Eminent Domain, § 6.38(1). In the instant case no fraud or abuse of discretion has been clearly shown or alleged in this matter.
For the foregoing reasons, I am of the view that the final judgment reviewed herein was providently entered and should be affirmed.
NOTES
[1] For purposes of a motion to dismiss, all well pleaded facts and reasonable inferences therefrom are admitted, Russell v. Community Blood Bank, Inc., Fla.App. 1966, 185 So.2d 749, 750.
[2] While the plaintiffs' complaint is not as specific as it could be, it is apparent from the allegations in the complaint that it makes a prima facie showing that the plaintiffs owned the fee title to the land traversed by the easements in favor of the State Road Department even though the description in the deeds to several of the plaintiffs excepted road right-of-ways. See 4 Fla.Jur., Boundaries, § 9; Lewis v. East Texas Finance Co., 1941, 136 Tex. 149, 146 S.W.2d 977, 980; Thompson on Real Property, 1962, Vol. 6, § 3095 at 810.
[3] See also Tatum Bros. Real Estate & Investment Co. v. Watson, 1926, 92 Fla. 278, 109 So. 623, 626, where the court stated that "property" in its strict legal sense, "means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or objects. * * *" (Emphasis added.)
[4] Cf. Duval Engineering and Contracting Company v. Sales, Fla. 1955, 77 So.2d 431, where it was held that a slight impairment of a citizen's riparian rights by the state was not compensable as a taking.