504 So.2d 1318 (1987)
Marjorie SCHICK, Robert Schick, Bertha Hannis, Melody Schick Stein, Richard Stein, Estate of Horace Hull, Vilma Mae Hull, Stella Napotnik, Appellants,
v.
FLORIDA DEPARTMENT OF AGRICULTURE, Appellee.
No. BM-360.
District Court of Appeal of Florida, First District.
March 18, 1987.
Randall E. Denker, of Lehrman and Denker, Tallahassee, for appellants.
Frank A. Graham, Jr., Resident Counsel, Florida Dept. of Agriculture, Tallahassee; and Harry Lewis Michaels, Tallahassee, for appellee.
JOANOS, Judge.
This is an appeal from a dismissal with prejudice of a claim for compensation for inverse condemnation. Three questions are presented for our review: (1) whether appellants may raise a claim for inverse condemnation for pollution of underground *1319 water in privately-owned wells, (2) whether appellants may maintain a tort claim against the state in regard to its conduct of the nematode eradication program, and (3) whether appellants may maintain a claim predicated on strict liability against the state. We affirm in part and reverse in part.
Appellants' initial 18-count complaint sought damages from the Florida Department of Agriculture (FDA) for ethylene dibromide (EDB) contamination. The complaint was dismissed pursuant to FDA's motion, with leave to file an amended complaint within twenty days. Appellants' second amended complaint was again met with a motion to dismiss based on allegations that appellants' claims were barred by the doctrine of sovereign immunity, and that the allegations of the complaint did not state a taking by FDA. The trial court dismissed the second amended complaint with prejudice, finding that its allegations were in substance identical to the allegations of each count of the first complaint. Thereafter, the trial court denied appellants' motion to alter or amend the order of dismissal.
The first question for our consideration is appellants' inverse condemnation claim for pollution of underground water in privately owned wells. The Florida Constitution bars the taking of private property except for public use, and then only after full compensation. Art. X, s. 6, Fla. Const.; Village of Tequesta v. Jupiter Inlet Corporation, 371 So.2d 663, 669 (Fla.), cert. denied, 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 377 (1979). Thus, a cause of action for inverse condemnation will lie against a government agency, which by its conduct or activities, has taken private property without a formal exercise of the power of eminent domain. Pinellas County v. Brown, 420 So.2d 308, 309 (Fla. 2d DCA 1982), petition for review denied, 430 So.2d 450 (Fla. 1983).
It is well settled that an action for inverse condemnation is available only in those instances where the "taking" has effectively deprived the owner of all reasonable and beneficial use and enjoyment of the property. Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981); City of Jacksonville v. Schumann, 167 So.2d 95 (Fla. 1st DCA 1964), cert. denied, 172 So.2d 597 (Fla. 1965); Florida Audubon Society v. Ratner, 497 So.2d 672 (Fla. 3d DCA 1986). Since there is no settled formula to determine when a valid exercise of the police power stops and an impermissible encroachment of private property rights begins, the determination must be made on a case by case basis.
In Poe v. State Road Department, 127 So.2d 898, 900 (Fla. 1st DCA 1961), a taking was defined as:
[1] entering upon private property for more than a momentary period and, [2] under the warrant or color of legal authority, [3] devoting it to a public use, or [4] otherwise appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof.
Examples of conduct which constitute a taking of private property are: negligently permitting clay, sand, and silt to wash from a road embankment onto adjoining land in such quantities as to damage the land permanently and render it useless for any practical purposes; and construction of a highway embankment in a manner that impeded the flow and raised the level of a millrace to such an extent as to destroy the use of a grist mill. Poe, 127 So.2d at 900.
The Fourth District held, in Kendry v. State Road Department, 213 So.2d 23 (Fla. 4th DCA 1968), cert. denied, 222 So.2d 752 (Fla. 1969), pursuant to State Road Department v. Tharp, 146 Fla. 745, 1 So.2d 868 (1941), that to demonstrate a taking it was not necessary to show that all value in the property had been destroyed. In Kendry the governmental activity resulted in flooding of appellants' properties. The court found the second amended complaint clearly alleged the flooding rendered the properties useless for all residential purposes, and concluded therefore that the allegations were sufficient to demonstrate a taking. A similar result obtained in Young v. Palm *1320 Beach County, 443 So.2d 450 (Fla. 4th DCA 1984). In Young the court held that the amended complaint which alleged a steady increase in airplane flights over a 14-year period, with the attendant noise which substantially interfered with the beneficial use and enjoyment of appellant's property, was adequate to state a cause of action for inverse condemnation. The court further found that appellant did not have to allege that the conditions complained of were reasonably expected to continue.
In this case, FDA relies on Hillsborough County v. Gutierrez, 433 So.2d 1337 (Fla. 2d DCA 1983) to support its contention that appellants have not been deprived of all beneficial use of their property. In Gutierrez, the court found the flooding which damaged the Gutierrez residence did not constitute a "taking" because there had been no permanent invasion amounting to an appropriation. Instead, the evidence showed the parties were residing in their residence and the damage caused by the flooding had been remedied at their expense. On these facts, the court found the parties' use and enjoyment had been impaired, but they had not been substantially deprived of the beneficial use of their property.
We find the supreme court's opinion in Village of Tequesta v. Jupiter Inlet Corporation is instructive with respect to the circumstances of the instant case. In Tequesta the court said:
The right of the owner to ground water underlying his land is to the usufruct of the water and not to the water itself. The ownership of the land does not carry with it any ownership of vested rights to underlying ground water not actually diverted and applied to beneficial use.
Village of Tequesta, 371 So.2d at 667. The court distinguished the "taking" of airspace above the land from the "taking" of water located in a ground aquifer, on the premise that the airspace damage worked to deprive the owners of all beneficial use of their property. In Tequesta, however, the alleged damage to the shallow water aquifer merely deprived a developer of access to an inexpensive water supply, thus the damage was not compensable through inverse condemnation. The court reasoned:
It is incumbent upon Jupiter to show, not only a taking, but also that a private property right has been destroyed by governmental action. Jupiter did not have a constitutionally protected right in the water beneath its property. In the cases cited by Jupiter, the courts supported compensation for the taking of a use which was existent and of which a party was deprived. Jupiter seeks to be compensated for a use which it had never perfected to the point that it was in existence. Jupiter had a right to use the water, but the use itself is not existent until this right is exercised.
Id., 371 So.2d at 670.
In the instant case, appellants allege in the second amended complaint that: (1) from 1961 until the summer of 1983, FDA applied EDB in amounts far in excess of the chemical manufacturer's recommended use and in excess of the amount allowed by the Environmental Protection Agency (EPA); (2) in the summer of 1983 the Florida Department of Environmental Regulation (DER) found appellants' water supply was contaminated; (3) the use of EDB was banned in Florida in 1983; (4) for more than ten years prior to 1983, EDB was known to be a highly toxic chemical, a potent mutagen, and a suspected carcinogen; (5) FDA's activities permanently deprived appellants of all reasonable beneficial use and enjoyment of their properties; and (6) the properties are residential, and without a clean water supply they are virtually worthless.
In this case, unlike the position of the developer in Village of Tequesta, appellants have been deprived of the existing use of the water in their wells and pipes. Appellants had exercised their constitutionally protected right of the existent use of the water in their wells up until 1983 when DER barred further use due to the EDB contamination. Accordingly, we find that appellants' second amended complaint alleges that substantial interference with the beneficial use and enjoyment of their property *1321 sufficient to state a cause of action for inverse condemnation.
The second question presented for our review is whether the doctrine of sovereign immunity precludes appellants' suit against FDA predicated on allegations of negligence in the conduct of the nematode eradication program. We note at the outset that enactment of section 768.28, Florida Statutes,[1] "eliminated the immunity which prevented recovery for existing common law torts committed by the government." Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912, 914 (Fla. 1985). However, in Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010 (Fla. 1979), the court held that although section 768.28 evinces legislative intent to waive immunity on a broad basis, that waiver does not encompass "discretionary" governmental functions. The reason for this is the court's perception that "certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance." Id., 1022. To aid in identifying the functions which are not subject to a waiver of immunity, the supreme court adopted an analysis which distinguishes between "planning" and "operational" levels of decision-making by governmental agencies.[2]
The planning level-operational level analysis adopted in Commercial Carrier, was utilized by the supreme court in City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982). In Collom, the court reasoned that 
once a governmental entity creates a known dangerous condition which may not be readily apparent to one who could be injured by the condition and the governmental entity has knowledge of the presence of people likely to be injured, then the governmental entity must take steps to avert the danger or properly warn persons who may be injured by that danger. (citation omitted). The failure of government to act in this type of circumstance is, in our view, a failure at the operational level.
City of St. Petersburg, 419 So.2d at 1086. The court deemed it "unreasonable to presume that a governmental entity, as a matter of policy in making a judgmental, planning-level decision, would knowingly create a trap or dangerous condition and intentionally fail to warn or protect the users of that improvement from the risk." Therefore, it was considered "logical and reasonable to treat the failure to warn or correct a known danger created by government as negligence at the operational level." Id. Accord Avallone v. Board of County Commissioners of Citrus County, 493 So.2d 1002 (Fla. 1986); Ralph v. City of Daytona Beach, 471 So.2d 1, 2 (Fla. 1983).
In City of Daytona Beach v. Palmer, 469 So.2d 121 (Fla. 1985), the decisions of firefighters regarding how to fight a fire were construed as "discretionary judgmental decisions which are inherent in this public safety function of fire protection." Id., 123. However, the court went on to distinguish firefighting decisions 
from negligent conduct resulting in personal injury while fire equipment is being driven to the scene of a fire or personal injury to a spectator from the negligent handling of equipment at the scene. Governmental entities are clearly liable *1322 for this type of conduct as a result of the enactment of section 768.28, Florida Statutes (1983).
Id. See also Hardie v. City of Gainesville, 482 So.2d 394, 397 (Fla. 1st DCA 1985), rev. denied, 488 So.2d 67 (Fla. 1986), where this court held that maintenance and operation of electrical service "involves operational activities for which there is no sovereign immunity."
We have considered the analysis set forth in Commercial Carrier and Trianon Park in the context of its pertinence to the nematode eradication program which is the subject of the complaint in this case, and we recognize the inherent difficulty in applying the suggested criteria. However, our examination of this record in light of the criteria provided by the supreme court has led us to conclude that actual implementation of the program was a service designed, albeit indirectly, for the welfare of the citizens of the state. Furthermore, excessive application of EDB is the type of negligent conduct deemed operational in City of Daytona Beach v. Palmer. Thus, in the final analysis, the FDA nematode eradication program weighs more heavily on the side of an operational than a planning level governmental function.
The allegations of the complaint are consistent with a construction of the program as an operational level function. Accordingly, we find the complaint alleges facts which indicate that sovereign immunity would not bar the suit.
As their final point, appellants urge us to find that the section 768.28 limited waiver of sovereign immunity does not encompass suits based on a theory of strict liability. The argument is an intriguing one, however, as FDA correctly argues, Florida's Tort Claims Act has adopted much of the language of the Federal Tort Claims Act, and in construing the extent of the waiver intended by the act, Florida courts have consulted federal decisions. See Commercial Carrier Corporation v. Indian River County, supra; Hollis v. School Board of Leon County, 384 So.2d 661 (Fla. 1st DCA 1980).
The United States Supreme Court has held unequivocally that the Federal Tort Claims Act does not contemplate the imposition of strict liability of any kind upon the government. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); Laird v. Nelms, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499, reh. denied, 409 U.S. 902, 93 S.Ct. 95, 34 L.Ed.2d 165 (1972). The Act expressly provides that sovereign immunity is waived only to the extent specified in the act, that is, liability will attach to the government in the same manner and to the same extent as to a private individual under like circumstances. s. 768.28, Fla. Stat. (1985); 28 Fla.Jur.2d, Government Tort Liability, s. 11. Thus, the removal of sovereign immunity in tort actions does not impose strict liability in its place. 57 Am.Jur.2d, Municipal, School, and State Tort Liability, s. 54.
In summary, we find the allegations of the second amended complaint state a cause of action for inverse condemnation and establish operational level activities with respect to the nematode eradication program. Therefore, we reverse the final order with respect to these issues. We affirm the final order with respect to dismissal with prejudice of the claim founded on a theory of strict liability.
Accordingly, the order appealed is affirmed in part, reversed in part, and this cause is remanded with directions to allow appellants to proceed with their claim for compensation for inverse condemnation and with their tort claim against the state in regard to the conduct of the nematode eradication program.
MILLS and SHIVERS, JJ., concur.
NOTES
[1] s. 768.28(1), Fla. Stat. (1985), provides:

(1) In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. Any such action may be brought in the county where the property in litigation is located or, if the affected agency or subdivision has an office in such county for the transaction of its customary business, where the cause of action accrued.
[2] See Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968).