109 So.2d 591 (1959)
STATE ROAD DEPARTMENT OF FLORIDA, an Agency of the State of Florida, Appellant,
v.
J.C. DARBY, Appellee.
No. A-465.
District Court of Appeal of Florida. First District.
March 5, 1959.
*592 Richard B. Austin, Jacksonville, for appellant.
Shell & Fleming, Pensacola, for appellee.
STURGIS, Chief Judge.
Plaintiff below, J.C. Darby, sued in equity to enjoin an alleged trespass upon his lands by the defendant State Road Department of Florida, and prayed, alternatively, that the defendant be required to exercise its right of eminent domain as a means of making restitution for the damages occasioned by the trespass.
Upon final hearing the Circuit Court of Escambia County, Crosby, J., entered an order finding that there had been "a taking of a portion of plaintiff's property by the defendant for public use without just compensation," and transferred the cause to the law side of the court "for a determination of the amount of the property taken and the value of such property through a proceeding in the nature of condemnation proceedings." Defendant appeals from that order.
The record before this court reflects that the State Road Department contracted with Scott Construction Company for the reconstruction of a state road in Escambia County; that Faulk and Coleman Construction Company, a subcontractor, undertook to perform the work for Scott Construction Company but defaulted therein and after protracted delays the original contractor completed it. They are not parties to the suit. It also appears that the plans and specifications governing said contract were prepared by the State Road Department; that they required a substantial fill to be constructed adjacent to lands of the plaintiff; that the work was performed under the auspices and supervision of the State Road Department; that as a result of the work a substantial amount of red clay, sand and silt from the fill and construction work was washed onto appellee's property, resulting in permanent damage to it; that early in its development this washing condition and its effect on plaintiff's land was brought to the attention of the project engineer who on behalf of the State Road Department exercised supervision over the contract; that he invited the contractor's attention to the fact that plaintiff's property was being damaged by the diversion of the material as a result of the construction of the fill. It does not appear that the defendant State Road Department took any affirmative action to repair the damage or prevent its aggravation. It does appear that under the contract the State Road Department is entitled to be indemnified by the contractor for any liability incurred by the former as a result of damages to adjacent private property caused by acts outside the purview of the contract.
In answer to a question regarding the adequacy of the plans and specifications to protect against the contingency as a result of which appellee suffered the alleged damages, the project engineer acknowledged that they contained no provisions specifically designed to protect plaintiff's property from damage, but stated that
"if the job is properly constructed, in the proper sequence, and properly maintained, * * * such damage will be none or negligible."
He then testified that in his opinion the contractor had not followed the proper sequence in construction; that the job was abandoned not once but several times, for periods ranging from a week to several months, leaving no equipment or personnel to maintain the work; and that the maintenance was insufficient to prevent silting *593 which was allowed "to more or less get out of hand."
It is not contested that the damage resulted in whole or in part from the negligence of the contractor and subcontractor. It is the general rule that the State Road Department is not answerable for such damages when it is not a joint tort feasor and has not participated to the extent that there is an actual or implied taking on its part. State Road Department v. Tharp, 146 Fla. 745, 1 So.2d 868. There can be no recovery against a governmental agency where the activities engaged in are the mere performance of some public function or duty unrelated to a deliberate taking or necessary damaging of private property. Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666. The converse is true where, as in this case, the public authority prepares the plans and specifications for the work, exercises supervision over it, becomes acquainted with a faulty performance under the contract that results in damage amounting to the taking without just compensation of the property of another, and fails to promptly take such steps as may be necessary to repair the injury and avert a recurrence or aggravation thereof. Under such circumstances the taking is implied on the theory that the damage was a necessary incident to the prosecution of the work. Those agencies which under the power of eminent domain set about to perform works that require the use of private property are charged with the responsibility of procuring the title to or easements over and upon all such property as may be required for their purposes, and the constitutional requirement to pay just compensation to the private owner will not be frittered away by failure to take the preliminary precaution of acquiring the necessary interests in the manner provided by law.
Affirmed.
THOMAS, ELWYN, Associate Judge, concurs.
CARROLL, DONALD, K, Judge (dissenting).
I must dissent from the majority opinion for the reason that I do not believe there has been a "taking" here. As pointed out by the Florida Supreme Court in Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422, Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A., provides "nor shall private property be taken without just compensation", but the Constitution does not expressly forbid "damage" to property without just compensation.
The appellant, the State Road Department, as an agency of the State, cannot be sued without the consent of the State, and such consent has been given only in Section 337.19, Subsection (1), Florida Statutes, F.S.A., which provides:
"Suits at law and in equity may be brought and maintained by and against the department on any claim under contract for work done; provided, that no suit sounding in tort shall be maintained against the department."
As pointed out in the majority opinion, in the case at bar it is not contested that the damages resulted in whole or in part from the negligence of the contractor and subcontractor. The complaint alleges that "there has not been placed proper drainage facilities to conduct the course of the water across or past said highway construction work nor to prevent the clay being used in said construction work from washing onto plaintiff's property and that as a result a very large amount of red clay and sand or silt has been carried off the road onto plaintiff's property * * *."
The concluding paragraphs of the complaint read:
"That this taking of the Plaintiff's property constitutes a continual trespass and an irreparable injury to him, and he is prohibited from maintaining an action at law to recover for damages against the State Road Department and his only relief is in equity.

*594 "Wherefore the Plaintiff prays that an injunction issue against the Defendant prohibiting further continuance of the trespass and requiring the removal of the sand and silt, or in the alternative, that the Defendant be required to exercise its right of eminent domain as a means of making restitution to the Plaintiff and that the Defendant pay to the Plaintiff such attorney's fee as the Court deems reasonable."
It seems to me upon consideration of the whole record that this case in essence sounds in tort and that the appellee-plaintiff, in order to avoid the fact that the State Road Department is non-suable in tort, has tried to transform the case into one of "taking" so as to come within the purview of the constitutional provision that the private property may not be "taken" without just compensation. The appellee's remedy, if any, would seem to be in tort against the contractor and subcontractor.
The Circuit Court apparently accepted the theory this case involved a "taking". In its order appealed from the Court, after finding that "there has been a taking of a portion of the Plaintiff's property by the Defendant for public use without compensation", decreed:
"That this cause be and it is hereby transferred to the law side of this Court for determination of the amount of the property taken and the value of such property through a proceeding in the nature of condemnation proceedings."
The critical question on this appeal, then, is whether there has been a "taking" within the meaning of the word in the constitutional provision. In my opinion, the record here fails to establish such a taking.
The general rule, and I think the better view, is that for an overflow to be a taking it must constitute an actual, permanent invasion of the land, amounting to an appropriation of, and not merely an injury to, the property. See 18 Am.Jur., Eminent Domain, Section 134, and 12 Fla.Jur., Eminent Domain, Section 70, and cases and annotations cited therein. Compare Arundel Corp. v. Griffin, 89 Fla. 128, 103 So. 422, State Road Department v. Tharp, 146 Fla. 745, 1 So.2d 868, and Weir v. Palm Beach County, Fla., 85 So.2d 865.
While the record does show a physical invasion of a part of the plaintiff's land by the clay, sand, or silt, the record, in my opinion, fails to show a permanent invasion, which is required to establish a taking. Apparently the appellee did not think it was permanent, for in his complaint, as quoted above, he prayed in the alternative for an injunction requiring the appellant to remove the sand and silt.
I would therefore reverse the order appealed from.