127 So.2d 898 (1961)
Leslie N. POE, Appellant,
v.
STATE ROAD DEPARTMENT of Florida, a component agency of the State of Florida, Appellee.
No. C-209.
District Court of Appeal of Florida. First District.
March 7, 1961.
Rehearing Denied April 5, 1961.
MacLean & Webb and Schwartz, Proctor, Bolinger & Austin, Jacksonville, for appellant.
Clyde G. Trammell, Jr., Tallahassee, for appellee.
WIGGINTON, Chief Judge.
Appellant landowner brought suit in equity against appellee State Road Department alleging by his complaint that in reconstructing and rebuilding a section of state highway appellee redesigned and changed the drainage system of the road in such manner as to cast on plaintiff's property *899 quantities of surface water. It is alleged that by so diverting surface waters from their natural drainage course a lake covering approximately ten acres of plaintiff's property is artificially formed during rainy weather which stands for as much as twenty-four hours or more before subsiding, thereby greatly damaging and destroying the land and rendering impossible its use for truck farming. Appellant alleged that the action of appellee constitutes an unlawful appropriation of his land without the payment of compensation, and prays the court to enter a mandatory injunction ordering appellee to cease and desist from its unlawful use and occupancy of plaintiff's land by permitting surface waters to accumulate thereon, or in the alternative to require appellee to condemn an easement over the ten-acre parcel which is subject to periodic flooding, and to pay plaintiff just compensation for such easement.
To the complaint appellee filed an answer asserting the defense of general denial, and in addition plead the affirmative defense of res adjudicata. By this latter defense it is alleged that on a date preceding the filing of this action appellee instituted an eminent domain proceeding in which appellant was joined as a defendant, and by which appellee sought to acquire from appellant a strip of land on the south side of the existing state highway for road purposes, and an easement for a drainage ditch three hundred feet long extending from the existing state road right-of-way in a northerly direction over appellant's remaining land. It is alleged that in that proceeding appellant claimed damages for the flooding of his land which had theretofore resulted, and which would result in the future from the manner in which the state road was rebuilt, as well as the defective manner in which the drainage ditch located on the easement acquired in the suit had been designed and constructed. Appellant claimed in that proceeding that because of the improper construction and design of the highway and drainage ditch his lands adjacent thereto were subject to flooding during the rainy seasons of the year which rendered the ten-acre parcel in the vicinity of the highway and drainage ditch unfit for the purposes of cultivation as part of the appellant's truck farm. It is alleged that these issues were tried and determined by the jury in the eminent domain proceedings wherein appellant was awarded a judgment for the taking of his land and the consequential damages which he claimed he suffered and would continue to suffer as a result of the taking.
After final hearing on the merits of the case now before us the chancellor entered a decree dismissing the complaint with prejudice, finding as a matter of law that appellant's claim to relief was barred under the doctrine of res adjudicata. It is from that decree this appeal has been taken.
Appellant's principal contention is that the trial court erred in holding that the right to relief as prayed for in his complaint is barred under the doctrine of res adjudicata. Appellant correctly points to those factors which must be present before the doctrine of res adjudicata is applicable, namely: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality in the person for or against whom the claim is made.[1] The test to be applied in determining the identity of the cause of action, for the purpose of determining res adjudicata, is the identity of the facts essential to the maintenance of the action.[2]
Appellant urges that the cause of action now sued upon is not identical with the cause of action which formed the basis of the eminent domain proceeding. In the latter suit, the only issue involved was the *900 just compensation to be paid for the taking of appellant's property as described in the complaint, together with the consequential damages suffered by him as a result of the taking. He strenuously contends that in the present suit his cause of action is based upon the theory that there has been an unlawful taking and appropriation of ten acres of his land by appellee for which he is either entitled to be compensated, or he should be awarded a mandatory injunction requiring appellee to take such steps as are necessary in order to prevent the recurrent flooding of his land. If we consider only the allegations of the complaint, we are forced to conclude that appellant's position that the two causes of action under consideration are not identical is correct as a matter of law. The fact that he was compensated for the consequential damages suffered as a result of the taking in the condemnation suit would not bar him from instituting his present suit seeking compensation for the actual taking of ten acres of his property. The appropriation of the ten acres of appellant's property involved in the present action was not an issue in the eminent domain proceeding. It is generally held that a judgment rendered in an eminent domain proceeding is not conclusive as to the items of damage which were not in issue or within the scope of the issues or with respect to which the owner's right to sue was expressly reserved: Thus the condemnation judgment does not preclude a subsequent claim for injuries caused by a new and distinct act of the condemnor or by negligent or wrongful acts, or by unlawful use of the condemned property, or by the construction of the work in question in a manner different from that originally contemplated.[3]
Our decision must necessarily rest upon a determination of what constitutes a taking of private property for public use, as distinguished from what constitutes consequential or resulting damages allowable in an eminent domain proceeding. It seems to be the accepted principle of law that a "taking under the power of eminent domain may be defined as entering upon private property for more than a momentary period and, under the warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof."[4]
Typical of acts which will constitute a taking of private property for public use is the situation involved in Darby.[5] There the act of negligently permitting clay, sand and silt to wash from a road embankment onto adjoining land in such quantities as to permanently damage and render it useless for any practical purposes was held to constitute a taking. Likewise in Tharp[6] the construction of a highway embankment in such manner as to impede the flow and raise the level of a millrace to such an extent as to destroy use of plaintiff's grist mill was held to be a taking. In each of these instances it is seen that the acts of the defendants permanently and for all times deprived the plaintiff owners of the use and enjoyment of their property.
On the contrary it has been held that "In the absence of any unjustified entry upon land of which the fee is held by a private owner, the construction and maintenance of a public improvement under legislative authority in such a manner as to inflict an injury upon adjacent land which would be actionable without such authority does not constitute a taking of such land, unless the owner is substantially ousted and deprived of all beneficial use of the land *901 affected."[7] Acts of a public agency in the construction of a public improvement which results in recurrent but temporary flooding of adjacent lands owned by private individuals has been held to be only a consequential damage, and not a taking of the flooded properties within the meaning of the Constitution which prohibits the taking of private property without the payment of just compensation.[8] It is universally recognized that injury by the condemnor to remaining land caused by obstructing, diverting or increasing the flow of surface waters, but which do not amount to a permanent deprivation by the owner of the use of such remaining lands, is a consequential damage resulting from the taking in an eminent domain proceeding, and must be recovered in that proceeding, if at all.[9]
Turning now to the evidence adduced before the chancellor in this proceeding we find that appellant's answer filed by him in the eminent domain proceeding claimed compensation for the taking of a fraction of one acre of his property, and in addition, claimed compensation for the consequential damages he would suffer as a result of the taking. During the course of the trial in that case appellant testified that prior to the reconstruction of the highway and the installation of the drainage ditch he used the ten-acre parcel of land in question for truck farming. He admitted that during heavy rainfalls surface waters flowing over his remaining lands flooded the particular parcel in question prior to reconstruction of the highway, but this occurred infrequently and was of only temporary duration. He testified that since the new highway had been constructed and the drainage ditch installed the parcel of land in question flooded after normal rainfall, and stayed covered with water for such lengths of time as to render it unsuitable for farming purposes. He testified that in his opinion this change of condition resulted from the manner in which the highway had been reconstructed which diverted the normal flow of surface waters on his property and because of its defective design the drainage constructed by appellee was not effective to carry off the water and prevent the flooding of his land. In addition, appellant offered the expert testimony of an engineer who testified that in his opinion the flooding of appellant's property was due to the diversion of surface waters caused by the reconstruction of the new highway and by the defective design of the drainage ditch installed on the easement being acquired in that suit. Judgment was entered in favor of plaintiff in accordance with the verdict rendered by the jury. No appeal from that judgment was taken. It is conclusively presumed that there was included in this judgment an award for such consequential damages to which the jury found appellant entitled.[10]
The record further reflects that in support of the allegations of his complaint in the present action appellant offered substantially identical proof of damages as was introduced by him during the condemnation suit. In both suits he testified that his damages amounted to $1,000 an acre for each of the acres subject to flooding. The only substantial difference in the proof offered by appellant in the two cases is that the amount of land which he now claims to have been damaged by flooding is thirteen acres rather than the ten acres contended for in the eminent domain proceeding.
Thus we see upon an examination of the evidence adduced on trial that appellant failed to prove those allegations of his complaint by which it is contended that there has been an unlawful taking or *902 appropriation of his property. His evidence failed to establish that appellee had either physically invaded his property, or that acts attributable to appellee had resulted in the permanent overflowing of his land. In the last analysis it clearly appears that the only injury suffered by plaintiff is the consequential damages to the remainder of his property caused by the recurrent flooding of a thirteen-acre parcel of his land due to the accumulation of surface waters following heavy rainfall. In Carlor the Supreme Court held that it is well established that the rules governing the application of the doctrine of res adjudicata are applicable to condemnation judgments and that the parties are concluded as to all matters which either were put in issue or to all matters which might have been put in issue or necessarily implied in the decision of the trial court such as the items and amount of compensation to be paid. It is immaterial that the point adjudicated may have been erroneously decided. If it was, the owner should have corrected the error by appeal and cannot now do so by a collateral attack upon the judgment.[11] In Osborne the point for determination by the Supreme Court was whether or not a condemnation judgment duly paid and accepted, is a complete defense to a subsequent action for damages under an alleged landlord and tenant relationship or under an alleged trespass where such action is based upon facts existing prior to the entry of the condemnation judgment. It was held that the same questions presented in the later suit for damages had been raised and adjudicated in the condemnation proceeding, and the plaintiff should not be permitted to adjudicate them again.[12]
In considering the evidence adduced at the trial of this cause, as distinguished from the allegations contained in the complaint, we find that the same issues of fact on which appellant relies for relief in this case were squarely raised and adjudicated in the prior condemnation proceeding. It follows, therefore, that the factors necessary to be established in order to apply the doctrine of res adjudicata are present in this record, and the chancellor was eminently correct in decreeing that plaintiff was barred from the relief sought under the affirmative defense of res adjudicata interposed by appellee. If we indulge the presumption, as we necessarily must, that plaintiff was compensated in the eminent domain proceedings for the damages which he claims to have suffered, he is not now entitled to additional damages for the reason that he failed to establish that the acts of appellee constituted an actual taking or appropriation of his land. Furthermore, if he has been compensated because of the damages he has suffered resulting from the manner in which the new highway was constructed and the defective design of the drainage ditch, he is not now entitled to a mandatory injunction requiring appellee to alter the construction of the highway or reconstruct the drainage ditch in accordance with a revised design which accords with plaintiff's views.
The decree appealed is accordingly affirmed.
Affirmed.
STURGIS and CARROLL, DONALD K., JJ., concur.
NOTES
[1] Donahue v. Davis et al., Fla. 1953, 68 So.2d 163; Yulee v. Canova, Fla. 1864, 11 Fla. 9.
[2] Youngblood v. Taylor, Fla. 1956, 89 So.2d 503.
[3] 29 C.J.S. Eminent Domain § 328, p. 1370.
[4] 12 Fla.Jur., Eminent Domain, § 68, p. 48: 18 Am.Jur., Eminent Domain, § 132, p. 756.
[5] State Road Department of Florida v. Darby, Fla.App. 1959. 109 So.2d 591.
[6] State Road Department of Florida v. Tharp, 1941, 146 Fla. 745, 1 So.2d 868.
[7] Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370; 12 Fla. Jur., § 68, p. 48.
[8] Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422.
[9] Nichols on Eminent Domain, 3rd Ed., Vol. 4, § 14.244(1).
[10] 29 C.J.S., Eminent Domain § 328, p. 1370.
[11] Carlor Co. v. City of Miami, Fla. 1953, 62 So.2d 897.
[12] City of Miami v. Osborne, Fla. 1951, 55 So.2d 120.