412 So.2d 400 (1982)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Jesse T. DONAHOO, et ux., Appellees.
No. AF-24.
District Court of Appeal of Florida, First District.
March 25, 1982.
*401 John H. Beck, Acting Gen. Counsel, Margaret-Ray Kemper and Ella Jane P. Davis, Tallahassee, for appellant.
R. Brownlee Eggart, Pensacola, for appellees.
ERVIN, Judge.
This is an appeal from an inverse condemnation action in which the trial court found that certain acts by the Department of Transportation (DOT), in connection with the construction of I-10 in Pensacola, constituted a taking of appellees' property. As a consequence, the court held that the appellees were entitled to a jury trial to determine the just compensation for their property. The DOT urges that the trial court erred in finding that a taking had occurred. We agree and reverse.
At the hearing, the following facts were adduced: The appellees purchased in 1956 a parcel of land located in the city of Pensacola. The parcel contained a three-story masonry building, the second and third floors of which were then operated as a hotel, while the ground floor was used as a furniture store. An alley owned jointly by the appellees and the adjacent property owner runs along the east side of the property. To the east of the property are railroad tracks and to the west, beyond one intervening parcel, a railroad yard.
After their purchase, the Donahoos continued to operate the hotel located on the top two floors and to rent the ground floor, *402 most recently for a pool hall. The adjacent alleyway was used to deliver various materials to the hotel.
In the early 1970's, the Department began preparations for the construction of a spur to I-10, running north and south through Pensacola, and connecting with I-10 to the north. Early DOT plans showed the right-of-way line cutting through the northeast corner of the building. Those plans were later modified and the right-of-way was relocated so as to miss the building entirely and to take only a corner clip from the property. The final plans for the project completely eliminated the property from the required right-of-way.
Before the final modifications, the appellees testified that in June, 1973, they were contacted by DOT personnel regarding the proposed acquisition of their property. Mr. Donahoo was also present when DOT discussed with the adjacent property owner, the acquisition of his property. The adjacent property owner testified that the appellee's hotel and pool room operated on the ground floor were, at the time of the conference, in operation. He also stated DOT's agents then represented that the appellees' property would, in addition to his property, be acquired for the project.
In late 1973 or early 1974, the appellees' attorney visited the DOT office in Pensacola and discussed with several DOT personnel the possible acquisition of the appellees' property. At that time, certain repairs to the property were necessary to bring the property into conformity with regulations of local governmental entities. Upon being asked their opinion, the DOT personnel counseled the appellees against making the needed renovations because of the proposed taking and because the renovations probably would not result in an enhanced purchase price by the Department.
Although the property was shown as being within the required right-of-way on the initial DOT maps and plans, authorization to acquire the property was never given, a DOT appraisal was never made, and no offer to buy was ever tendered to the appellees or their representative. In January, 1974, the Donahoos closed the hotel operated on the second and third floors of the building. The pool hall, however, located on the first floor, continued operating for another year-and-a half until the latter part of 1975 when the ground floor lease was terminated.
On March 6, 1974, the appellees were advised by phone that the Department would not require any of the property for the construction of I-10. The appellees' occupational license did not expire until September 30, 1974, and the Pensacola zoning ordinance allowed the reestablishment of a non-conforming use within 180 days after its discontinuance. Mr. Donahoo testified that he did not reopen the hotel because of his old age, poor health, and because of the high cost involved in making the repairs.
During the construction of the I-10 spur, which began in the vicinity of the property about February 15, 1978, a portion of the free-standing brick wall running along the back of the property was knocked down. Boundary markers and right-of-way stakes were placed in the alley itself as a result of a mistake by the Department, and equipment was stacked in the alley and leaned against the building. Dirt was also piled next to the building and a drain and curb were placed across the alley's entrance. All of these problems except for the repair of the brick wall were remedied during the construction. The markers were relocated, the contractor was advised not to stack equipment or dirt outside the right-of-way, and a curb cut was provided at the alley's entrance.
The interstate spur, as constructed, runs very close to the property. The northern corner of the three-story building is some 26 1/2 feet from the spur. The distance between the roadway and the property then increases to a maximum of 60 feet. Additionally, flood lights placed over the spur shine onto the east side of the building. The construction of the roadway resulted also in extensive highway noise which, according to the owner of the property, rendered *403 it unsuitable for use as a hotel. Finally, the acquisition of the right-of-way for the project cleared the entire area, with the exception of the appellee's business, of business establishments and homes and completely changed the character of the neighborhood.
A series of offers to buy the property was made after January 31, 1974, when the hotel was closed. An appraiser testified that the property was worth about $80,000 before the taking. At the time of the trial, the appellees had entered into a contract to sell the property for $50,000.
We agree with the DOT that none of its acts resulted in a taking for which compensation must be paid. A taking cannot result unless there has been "`a permanent invasion of the land amounting to an appropriation' different in degree or character from `damaged property,' and substantially depriving the owner of the land's beneficial use as compared with `merely impair[ing] its use.'" Department of Transportation v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980).
Neither the appellant's failure to purchase or condemn the appellees' property, nor the representations made to the appellees in connection therewith, constitute a taking. City of Miami v. Romer, 73 So.2d 285 (Fla. 1954); Dade County v. Still, 377 So.2d 689 (Fla. 1979). Nor can the appellees assert any theory estopping DOT from denying that a taking occurred. Before an estoppel can be invoked against the state, there must be (1) a representation by the party estopped to the party claiming the estoppel as to some material fact, (2) a reliance upon the representation by the party claiming estoppel, and (3) a change in such party's position caused by his reliance upon the representation to his detriment. Department of Revenue v. Hobbs, 368 So.2d 367 (Fla. 1st DCA 1979).
In the instant case, the record establishes that the appellees' hotel was forced to close because of local regulations, not because of the DOT's construction plans. Moreover, the landowners did not materially change their position as a result of the DOT's representations. The record establishes that the landowners had time to reopen the hotel and comply with the local regulations once they were informed by the DOT that their property would not be taken and that only health and financial reasons prevented the hotel's reopening. The elements of reasonable reliance and change in position are lacking, thereby precluding estoppel.
Nor can the landowner prevail in inverse condemnation on the basis of the effects of the construction as it did not deny the landowner all reasonable existing uses of the building. Travis v. Department of Transportation, 333 So.2d 86 (Fla. 1st DCA 1976). Cf. City of Jacksonville v. Schumann, 199 So.2d 727 (Fla. 1st DCA 1967), cert. denied, 204 So.2d 327 (Fla.), cert. denied, 390 U.S. 981, 88 S.Ct. 1101, 19 L.Ed.2d 1278; Dean v. State Road Department, 165 So.2d 257 (Fla. 3d DCA 1964), cert. denied, 169 So.2d 389 (Fla.). Most of the remaining acts complained of by the appellees were only temporary invasions that were remedied by DOT and hence do not constitute a taking. See State Road Department v. Darby, 109 So.2d 591 (Fla. 1st DCA 1959).
The destruction of the free-standing brick wall located at the rear of appellees' property, however, can arguably, under Darby, be considered a taking. We think Darby to be inapplicable to the facts before us since it was decided long before the legislature conditionally waived the state's immunity to tort actions by enacting Section 768.28, Florida Statutes (1975). We consider that appellees' claim for the destruction of their wall sounds in tort  not in inverse condemnation. See Division of Administration, State Department of Transportation v. Hillsboro Association, Inc., 286 So.2d 578 (Fla. 4th DCA 1973).
REVERSED.
McCORD and SHAW, JJ., concur.