433 So.2d 1337 (1983)
HILLSBOROUGH COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
Onelia GUTIERREZ and Angel Gutierrez, Appellees.
No. 82-1947.
District Court of Appeal of Florida, Second District.
July 6, 1983.
*1338 R. Elliott Dunn, Jr., Tampa, for appellant.
Elinor P. Smith of Shea & Smith, P.A., Tampa, for appellees.
DANAHY, Acting Chief Judge.
The appellees, plaintiffs below in an inverse condemnation suit, were granted a partial final judgment against the appellant, Hillsborough County (the County). We affirm in part and reverse in part.
In 1970 construction began in phases on a subdivision in the County that bordered on the east, south and west of land owned by the appellees on which they had been living for several years. During the construction of the various phases of the subdivision, the County had the responsibility to the general public to assure that the developer's drainage plan would work effectively for the disposal of all surface drainage water. The drainage system was not constructed according to the plan, and fill dirt placed adjacent to the south and west borders of the appellees' property impeded the natural flow of surface water from rainfall. As a result, a "flooding" condition of the appellees' property occurred where, prior to construction, water in small amounts would stand for a few days. The trial judge specifically found that:
This "filling" of the property adjacent to and abutting the Plaintiffs' property constituted an artificial addition to the natural topography and acted, in effect, as a dam for the natural flow of surface drainage waters. The Court finds that such flooding by blocking the natural flow of surface drainage waters is permanent, in that it permanently deprives the Plaintiffs of the beneficial use of the westerly and southwesterly portion of their property and is not merely an impairment of the use of their property. Flooding from the diversion of the natural flow of rain waters by an artificial construction is permanent in the sense that rain is a condition reasonably expected to continually re-occur [sic].
6. Plaintiffs' evidence showed, without refutation, that the flow of surface drainage water across the Plaintiffs' property occurred to such an extent that it actually invaded a portion of the Plaintiffs' home, thereby damaging a portion of said home and certain personal property therein. That such damage to the Plaintiffs' home and personal property together with the "ponding" conditions in the southwest portion of Plaintiffs' property constitute a "taking" of the Plaintiffs' property without just compensation.
7. The Court is convinced, after examining all of the evidence and a personal view of the physical area surrounding the Plaintiffs' property, that the drainage ditches proposed for the east and west sides of 58th Street adjacent to Plaintiffs' property and designed in the master drainage plan for the Palm River Subdivision could have prevented the flooding of Plaintiffs' property if they had been constructed in accordance with the drainage system proposed for the development, which enforcement of such construction was the responsibility of the Defendant, Hillsborough County. Additionally, the Defendant, Hillsborough County, through its review procedures of the planned drainage system for Palm River Subdivision should have determined that any natural flow of surface drainage water from the northeast to the southwest would have been impeded by the addition of "fill" material in the subdivision abutting the southwest corner of Plaintiffs' property and upon such review should had [sic] required additions to the drainage system which would have prevented the "ponding" which now occurs on the southwest portion of Plaintiffs' property.
8... . . The "taking" of the Plaintiffs' property by the repetitious flooding during the rainy season is of a permanent nature and has deprived the Plaintiffs of the beneficial use of the westerly and southerly portion of the Plaintiffs' property. Additionally, the repetitious flooding has caused the Plaintiffs to suffer the *1339 loss of certain personal property, including damage to the Plaintiffs' home and adjacent buildings.
To an extent, we find merit in the County's assertion that the trial judge erred in ruling that the County had inversely condemned the real and personal property of the appellees.
In Poe v. State Road Department, 127 So.2d 898, 900 (Fla. 1st DCA 1961), the court defined a taking as follows:
It seems to be the accepted principle of law that a "taking under the power of eminent domain may be defined as entering upon private property for more than a momentary period and, under the warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof."
The County disputes the trial judge's findings as to (1) the cause of the flooding; (2) the permanency of the flooding; and (3) the degree of the appellees' ouster from and the deprivation of the appellees' use of their property.
The County first maintains that the flooding conditions of the appellees' property existed prior to the subdivision's construction and points to a witness's testimony for support. The witness testified that he had observed water standing on the appellees' property prior to construction of the subdivision. However, the witness's testimony in its entire context was inclined toward the conclusion that the County's actions or the lack thereof had extremely heightened the standing water problem on the appellees' property.
The County next disputes the permanency of the invasion of water, contending that under precedent this invasion must be deemed temporary in nature. The County argues that the invasion, if any, results in recurrent but temporary flooding and only amounts to consequential damage, not a taking. Poe v. State Road Department at 901. For support, the County relies on the reference in the partial final judgment to "[t]he `taking' of the Plaintiffs' property by the repetitious flooding during the rainy season ... ." (Emphasis added.) The County asserts that the foregoing language shows that the trial judge misapplied the law. On the contrary, the judgment taken in its entirety and the record, upon examination, reveal that the trial judge understood the distinction between permanent and temporary flooding. The language to which the County refers is followed by the statement that that flooding is of a permanent nature. In fact, the judgment labels the flooding "permanent" no less than five times. Additionally, in Kendry v. State Road Department, 213 So.2d 23 (Fla. 4th DCA 1968), cert. denied, 222 So.2d 752 (1969), the appellate court, in considering whether flooding was permanent or temporary, held that flooding is permanent if "rain is a condition that is reasonably expected to continually reoccur in the future." Here, the trial judge seemed to paraphrase from Kendry in the judgment when he stated that the flooding "is permanent in the sense that rain is a condition reasonably expected to continually reoccur." Cf. Elliott v. Hernando County, 281 So.2d 395 (Fla. 2d DCA 1973) (diversion of rain waters can cause permanent flooding condition because rain reoccurs in the future). Moreover, portions of the record indicate that the trial judge was attempting to determine whether the flooding occurred only with excessive rainfall.
The County lastly contends that a taking did not occur because the appellees were not substantially ousted and deprived of all beneficial enjoyment of their real and personal property. We agree to an extent.
This court observed in Dudley v. Orange County, 137 So.2d 859 (Fla. 2d DCA 1962), appeal dismissed, 146 So.2d 379 (1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1014, 10 L.Ed.2d 12 (1963):
The record here does not show a continuous flooding for a long period of time in order to work an almost complete destruction of the value of the land in order to destroy its value entirely, inflicting *1340 irreparable and permanent injury to effect a constructive taking... .
Id. at 863.
Testimony revealed that the appellees, prior to the flooding of the portion of their land, farmed the area by growing fruit trees and vegetables, and by raising livestock. Subsequent to the flooding, the area has been rendered useless for farming purposes and appears to be a veritable mudland. We affirm the trial judge's conclusion that a complete destruction of the value of the land has occurred so as to constitute a taking of this portion. However, we do find problems with the unclear language in the judgment, where the portion of land inversely condemned is referred to in varying terms as the "westerly and southwesterly portion" or the "westernly and southernly" portion or the "southwest" portion. Because of the bifurcated nature of condemnation proceedings in which a jury of twelve determines the amount of damages, State Road Department v. Lewis, 190 So.2d 598 (Fla. 1st DCA 1966), cert. denied, 192 So.2d 499 (Fla. 1966), such untidy language may result in an award for a taking which the trial judge did not truly find. A decision under review may be remanded for clarification and amplification. Therefore, we remand the partial final judgment with instructions to the trial judge to specify with particularity the exact portion of the appellees' land that has been taken.
As to the finding that the appellees' residence has also been inversely condemned, we differ with the trial judge's conclusion.
In State, Department of Transportation v. Donahoo, 412 So.2d 400, 403 (Fla. 1st DCA 1982), the court held:
A taking cannot result unless there has been "`a permanent invasion of the land amounting to an appropriation' different in degree or character from `damaged property,' and substantially depriving the owner of the land's beneficial use as compared with `merely impair[ing] its use.'" Department of Transportation v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980).
At trial, it was revealed that the appellees presently reside in their house and that the flooding problems in their home had been remedied at the appellees' own expense.
Unlike federal law, Sun Oil Co. v. United States, 572 F.2d 786 (Ct.Cl. 1978), and some state law, State, Department of Transportation & Development v. Van Willett, 383 So.2d 1344 (La. Ct. App. 1980), Florida law does not recognize a temporary "taking." Poe v. State Road Department, 127 So.2d at 898; Dudley v. Orange County, 137 So.2d at 859; State, Department of Transportation v. Donahoo, 412 So.2d at 400. Since the flooding in the house has been remedied, the ouster that occurred can only be labeled as temporary in nature. The temporary ouster of the appellees from their residence supports a claim for damages sounding in tort rather than inverse condemnation. Donahoo; State Road Department v. Darby, 109 So.2d 591 (Fla. 1st DCA 1959). Hence, we reverse the trial judge's finding that the appellees' residence was inversely condemned.
As to the personal property in the home which the partial final judgment finds to have been inversely condemned, we believe the record supports this conclusion and affirm the trial judge's finding in this regard. Florida law recognizes that items of personal property may be "taken" in a condemnation proceeding under our constitution even though no statute prescribes such a remedy. Flatt v. City of Brooksville, 368 So.2d 631 (Fla. 2d DCA 1979). Although affirming this portion of the judgment, we must again ask the trial court on remand to amplify the partial final judgment to reflect the specific items of personal property "taken" as indicated in the record.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
SCHOONOVER and LEHAN, JJ., concur.