706 So.2d 50 (1998)
ASSOCIATES OF MEADOW LAKE, INC., Appellant,
v.
CITY OF EDGEWATER, etc., Appellee.
No. 97-13.
District Court of Appeal of Florida, Fifth District.
January 23, 1998.
Rehearing Denied March 4, 1998.
Franz Eric Dorn, Deltona, for Appellant.
Donna L. McIntosh of Stenstrom, McIntosh, Colbert, Whigham & Simmons, P.A., Sanford, for Appellee.
PETERSON, Judge.
Associates of Meadow Lake, Inc., ("Associates") appeals a final summary judgment determining that it failed to establish a cause of action for inverse condemnation.
Associates, the developer of a residential subdivision, sought inverse condemnation against appellee, the City of Edgewater, ("Edgewater"), on the grounds that Edgewater's construction of Whistle Stop Park without a properly functioning storm water management system had caused a continuous flooding of Associates' property during the early part of 1991. Associates admits that by late 1991, Edgewater's corrections to the water management system remedied Associates' flooding problem. Associates contends that it is entitled to full compensation for the "temporary" taking because it was denied "the reasonable use and enjoyment" of the property in the flooded condition.
*51 Edgewater argues that Associates has failed to state a cause of action for inverse condemnation by omitting any allegation that the flooding caused by Edgewater's faulty construction of the nearby park was permanent in nature. The trial court agreed with Edgewater and entered summary judgement in its favor, finding as a matter of law that Associates' allegations of a temporary flooding did not state a cause of action for inverse condemnation.
Section 606[2][c], Nichols on Eminent Domain, states:
There is no absolute rule regarding the magnitude or duration of flooding necessary to constitute a taking. It appears to be generally recognized that a single flood of short duration, or occasional temporary flowage, is not sufficient to constitute a taking. Conversely, substantial periodic flooding, coupled with a likelihood of recurrence, has been held to constitute a taking. Yet even this distinction may be easier to state than to apply. Most formulations of the rule speak of permanent invasions, even though "predictable periodocity" appears to be an acceptable substitute for "permanency."
The treatise then quotes as an example, a statement of the Florida rule:
[T]he flooding must constitute an actual, permanent invasion of the land, amounting to an appropriation of, and not merely an injury to, the property.
Nichols quoting Dudley v. Orange County, 137 So.2d 859, 863 (Fla. 2d DCA 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1014, 10 L.Ed.2d 12 (1963).
The Dudley court found that no taking occurred because the record failed to show that the plaintiff's property was continuously flooded for a long period of time. The flooding that took place in Dudley was not considered by the court to be so pervasive and continuous as to constitute a taking; it was an injury to, rather than an appropriation of, the plaintiff's property. Dudley, however, did not consider whether a taking can occur when substantial flooding caused by a public body, is eventually remedied. We find, contrary to the trial court's order, that remedial action by the governmental authority causing the flooding does not necessarily preclude an action for a temporary taking against that authority.
In Hillsborough County v. Gutierrez, 433 So.2d 1337 (Fla. 2d DCA 1983), the court found that the plaintiff's farmlands had been taken by the county's failure to enforce a drainage plan for an adjacent property. The plaintiff's home, however, was not deemed taken by the court because the flooding of the house had since been remedied. In so ruling the court noted that, unlike federal law and some state law, Florida does not recognize a "temporary" taking. By temporary, the court in Gutierrez clearly meant temporary in the sense that the condition which caused the property to be otherwise "taken" had been corrected. This is the "temporary" type of taking which the trial court, in the instant case, held was not compensable under Florida law, at least where the taking occurs through flooding.
Gutierrez, however, was decided four years before the landmark United States Supreme Court case of First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), cert. denied, 493 U.S. 1056, 110 S.Ct. 866, 107 L.Ed.2d 950 (1990). In First English Evangelical, the Supreme Court recognized a cause of action for a temporary taking for the period of time a zoning regulation prevented a property owner from having any reasonable use of his property. Interestingly, two years after Gutierrez, and before First English Evangelical, the author of the Gutierrez decision suggested in Pinellas County v. Ashley, 464 So.2d 176 (Fla. 2d DCA), rev. denied, 475 So.2d 693 (Fla.1985), that Florida does recognize a cause of action for a temporary taking ("[h]ad appellee made such a request and had the county also denied that request ... then arguably the county's actions would constitute a temporary taking").
In 1990, the Florida Supreme Court in In re Forfeiture of 1976 Kenworth Tractor Trailer Truck, Altered VIN 243340M, 576 So.2d 261 (Fla.1990), found that a meritorious claim of inverse condemnation existed where the Florida Highway Patrol improperly seized a truck for a period of two years. The fact that the physical appropriation ended after two years did not cause the "temporary *52 taking" to not be compensable under the Florida Constitution. In light of Kenworth, First English Evangelical and Ashley, it appears to us that the non-recognition of temporary takings in Gutierrez is no longer valid and that Florida now recognizes temporary takings as being compensable under its constitution.
We conclude that the trial court erred in finding that Associates failed to state a cause of action for inverse condemnation based upon the reasoning that Edgewater remedied the defects in its storm water management system. If substantial periodic flooding occurred and was expected to recur and such flooding denied Associates any reasonable use of its property because Edgewater defectively constructed its project, a cause of action for inverse condemnation does lie.[1] Because the trial court's order presumed that no taking claim could be brought by Associates because the condition allegedly caused by Edgewater had been remedied, the order dismissing Associates' complaint with prejudice is vacated.
ORDER VACATED.
GOSHORN and HARRIS, JJ., concur.
NOTES
[1] See also Elliott v. Hernando County, 281 So.2d 395, 396 (Fla. 2d DCA 1973) (flooding constituted a taking as the condition was permanent in sense that rain is a condition that is reasonably expected to continually re-occur in the future). Cf. Diamond K Corporation v. Leon County, 677 So.2d 90 (Fla. 1st DCA 1996) (no taking because no continuing physical invasion and a lack of complete deprivation of all reasonable use).