723 So.2d 287 (1998)
SOUTH FLORIDA WATER MANAGEMENT DISTRICT, Appellant,
v.
BASORE OF FLORIDA, INC., a Florida corporation, Appellee.
No. 97-3941.
District Court of Appeal of Florida, Fourth District.
October 14, 1998.
Rehearing Denied January 13, 1999.
Paul L. Nettleton of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Miami, for appellant.
Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., and John R. Young of Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, West Palm Beach, for appellee.
STONE, C.J.
South Florida Water Management District ("the district") challenges a judgment finding *288 that Basore of Florida, Inc., the plaintiff, had proven a "taking" by inverse condemnation. We reverse and remand for entry of a judgment in favor of the district.
Basore alleged that the district created conditions which caused Basore's farming operation to be flooded, thereby damaging its growing lettuce crop. Basore's theory was that its internal pumping efforts were thwarted by the district's failure to lower the levels of the West Palm Beach and Seminole canal before the anticipated storm. The district has asserted that it properly operated its water management and flood control system and that, to the extent the flooding existed, this was a 1 in 50 year storm event. After a bench trial, the trial court concluded that Basore had proven a "taking" of its lettuce crop.
Among its findings, the trial court concluded that the taking of personal property by flooding may be the proper subject of an inverse condemnation action in Florida. Hillsborough County v. Gutierrez, 433 So.2d 1337 (Fla. 2d DCA 1983); see also Kendry v. State Road Dep't, 213 So.2d 23 (Fla. 4th DCA 1968); Schick v. Florida Dep't of Agric., 504 So.2d 1318 (Fla. 1st DCA 1987). While we recognize this principal of law, we find it inapplicable here.
Proof that a governmental body has effected a taking of property is an essential element of an inverse condemnation action. Kendry v. Div. of Admin., 366 So.2d 391, 393-94 (Fla.1978). Generally, to support a claim for inverse condemnation associated with flooding, the flooding must be "an actual, permanent invasion of the land, amounting to an appropriation of and not merely an injury, to the property." See, e.g., Diamond K Corp. v. Leon County, 677 So.2d 90 (Fla. 1st DCA 1996); South Florida Water Management Dist. v. Steadman Stahl P.A., Pension Fund, 558 So.2d 1087 (Fla. 4th DCA), rev. denied, 574 So.2d 143 (Fla.1990); Bensch v. Metro. Dade County, 541 So.2d 1329, 1330 (Fla. 3d DCA 1989).
The parties in this case agreed in the trial court that this line of cases should not be applied. Nevertheless, it appears that the trial court relied on such cases in holding that the district caused and/or permitted an extended flooding of Basore's farms permanently damaging and/or destroying Basore's lettuce crop.
On appeal, Basore relies on Associates of Meadow Lake, Inc. v. City of Edgewater, 706 So.2d 50 (Fla. 5th DCA 1998), a temporary taking case decided after the trial court's order. After acknowledging the above wellsettled law regarding the need for the floodrelated taking to constitute an "actual, permanent invasion of the land ...," the Fifth District noted that such cases had been decided four years before the landmark United States Supreme Court case of First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). In First English, the Court recognized a cause of action for a temporary taking for the period of time a zoning regulation prevented a property owner from having any reasonable use of his property.
The Fifth District in Associates of Meadow Lake held that, in light of First English, the trial court had erred in finding that the plaintiffs failed to state a cause of action for inverse condemnation where the plaintiffs had alleged that the continuous flooding during part of 1991 was caused by defects in the defendant's storm water system. The Fifth District held that "if substantial periodic flooding occurred and was expected to recur and such flooding denied Associates any reasonable use of its property because Edgewater defectively constructed its project, a cause of action for inverse condemnation does lie." 706 So.2d at 52.
But, notwithstanding Associates of Meadow Lake, and Basore's argument on appeal that its holding governs, we note that Basore's position in the trial court was that it made "no claim for a temporary taking of the Plaintiff's [Basore's] land that would have been represented by the flooding of that land." Rather, Basore's position was that it was entitled to compensation for the permanent taking of the crop alone.
Further, we do not deem First English applicable under these circumstances. First English concerned an ongoing taking, based on a governmental regulation. In First English, *289 the appellate court had rejected a landowner's claim for damages resulting from a land use regulation prohibiting building in a flood prone zone. The Court rejected that reasoning, holding:
[W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government [amendment or elimination of the ordinance] can relieve it of the duty to provide compensation for the period during which the taking was effective. Invalidation of the ordinance without fair value for the use of the property during this period of time would be a constitutionally insufficient remedy.
482 U.S. at 321-22, 107 S.Ct. 2378.
Here, the destruction of the crop was a consequential damage resulting from the temporary flooding and not a constitutional taking. Further, although we recognize that personal property can be the subject of a taking, Broward County v. Rhodes, 624 So.2d 319 (Fla. 4th DCA 1993), we do question whether that principal is applicable when crop damage is associated with injury to land not taken. See Rabin v. Lake Worth Drainage Dist., 82 So.2d 353 (Fla.1955), cert. denied 350 U.S. 958, 76 S.Ct. 348, 100 L.Ed. 833 (1956).
In Rabin, the plaintiff sued the Lake Worth Drainage District alleging that he had planted peppers on land adjoining a canal maintained by the district. The plaintiff alleged that in order to destroy the hyacinths in the canal, the district caused the canal to be sprayed with a chemical herbicide which was blown onto the plaintiff's plants and which contaminated the plaintiff's irrigation water. The result was that the plaintiff's pepper crop was retarded and damaged. One of the three counts was for the unlawful taking of property.
The trial court dismissed the case. The Florida Supreme Court affirmed and held that the district was not responsible, as the crop was not "taken" by the state agency. 82 So.2d at 355. Rather, "it was destroyed and the destruction, if negligent, constituted a tort." Id.
Also significant are those cases addressing compensation for the taking of land where growing crops exist but are not determined to be personal property. In State Dep't. of Agric. and Consumer Servs. v. Mid-Florida Growers, Inc., 541 So.2d 1243 (Fla. 2d DCA 1989), citrus growers brought an inverse condemnation proceeding after their greenhouse seedlings were destroyed pursuant to a state agricultural order. There, the department entered an emergency order designating "eradication areas." The growers' nursery stock was intentionally burned. The court distinguished planted plants from those not yet in the ground for the purposes of differentiating personal property from damage to the land:
The parties to this action agree that the containerized plants which were destroyed in this case are personal property. Personal property may be taken by inverse condemnation. Flatt v. City of Brooksville, 368 So.2d 631 (Fla. 2d DCA 1979). Citrus agriculture demonstrates the difficulty in distinguishing between fructus naturales and fructus industriales. Summerlin v. Orange Shores, 97 Fla. 996, 122 So. 508 (1929); 63 Am.Jur.2d Property § 19, p. 251 (1984). Because these citrus plants were never planted in the ground, it seems clear that the destroyed property is personal property. If this case had involved a bare-root nursery in which the trees were grown for more than a year and were planted in the ground, the trees might arguably be classified as real property.
Mid-Florida Growers, Inc. 541 So.2d at 1244, n. 2. In Adams v. Adams, 158 Fla. 173, 28 So.2d 254, 255 (1946), citing Summerlin, the supreme court commented:
Crops of fruit growing on trees, whether regarded as fructus naturales or fructus industriales, are in general parts of the realty, and unless reserved, go with the realty in its transfer. But by the acts and intention of an owner of land containing bearing fruit trees the growing fruit may be converted into personalty for purpose of sale.
Applying the concept to watermelon crops, in Lee County v. T & H Assoc., 395 So.2d 557, *290 560 (Fla. 2d DCA 1981), the court recognized the "subtle distinction which is grounded upon the premise that until they reach the point of severance at maturity, crops inhere in the land on which they are growing."
We recognize that there is authority that a taking may occur when temporary flooding due to negligence results in damage to growing crops. See Cooper v. United States, 827 F.2d 762, 764 (Fed.Cir.1987). There, a blockage during construction caused unusual flooding, resulting in the death of a substantial number of trees. As in the instant case, the plaintiff alleged a taking of the trees, not the land. Similarly, he did not seek compensation for the timber predicated on a temporary taking of a flowage easement. The reviewing court noted that damages may be awarded under the Fifth Amendment for injuries from a temporary taking where the same injuries would not be compensable if a permanent taking had occurred. 827 F.2d at 763. Thereupon, it held that the taking under consideration was a taking of timber.
We need not resolve whether this reasoning might be applied here, as Appellee expressly stated that it was not arguing the "temporary taking" theory. Nevertheless, we recognize that the "temporary taking" theory is premised on First English which involved an ongoing regulatory taking. We hesitate to extend First English to accidental crop damage caused by simple negligence.
In sum, we agree with the district that damage to growing crops is generally not considered separate from taking land. Here, land is not alleged to have been taken. We need not consider whether the temporary taking cases should, as a matter of policy, be extended to damages in a "temporary" flooding, as here, the temporary taking theory was not presented and, in fact, was expressly rejected in the trial court. We also deem Associates of Meadow Lake inapposite, as the flooding in question there was recurring flooding that denied the landowner the reasonable use of its property. Further, even if we do consider the taking, under consideration here, to be one of personal property, we conclude that the record does not contain sufficient proof of willfulness to support a find of "taking" as distinguished from a tort claim. See Broward County v. Rhodes, 624 So.2d 319 (Fla. 4th DCA 1993).
Therefore, we reverse for entry of judgment in favor of the district.
POLEN and STEVENSON, JJ., concur.